[Moses v. McClain.]

## Moses *v.* McClain.

*Bill in Equity for Specific Performance against Vendor.*

1. *Conveyance of homestead by husband.*—A conveyance of the homestead by the husband alone is a nullity, conveying no title whatever to the grantee, and not operating against the husband even by way of estoppel.

2. *Same; specific performance against husband.*—Where the homestead lands, with the improvements thereon, exceed the statutory limit in value, but not in extent, and the wife refuses to join with her husband in a conveyance, the agreement will not be specifically enforced against the husband, on the offer of the purchaser to accept a conveyance of the tract from him alone.

3. *Statute of frauds, as defense against specific performance.*—A court of equity will not, generally, specifically enforce a contract which is wanting in mutuality; yet, when the contract is fair, just, and reasonable in all its parts, and the party sought to be charged has bound himself in writing, as required by the statute of frauds (Code, § 2121), it is not necessary that the party seeking to enforce it shall have also bound himself in writing.

APPEAL from the Chancery Court of Colbert.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on the 10th April, 1887, by Abram J. Moses, against John W. McClain; and sought the specific performance of a contract for the sale of a tract of land by defendant to complainant. The contract, a copy of which was made an exhibit to the bill, was dated October 21st, 1886, signed by the defendant, and in these words: "For and in consideration of the sum of one dollar in hand paid, I hereby give A. J. Moses an option on my lands and improvements situated near Sheffield, known as my home place, and containing 120 acres, more or less, for the sum of $8,000, to be paid, say $3,000 cash, and balance in one and two years, with interest from date of possession. Money to be paid when titles are approved. This option good for two hours." The chancellor sustained a demurrer to the bill, for want of equity, and his decree is now assigned as error. The opinion states the material facts.

THOS. R. ROULHAC, and S. T. PRINCE, for appellant. (1.) Under constitutional provisions, a homestead exemption is limited to $2,000 in value, and to eighty acres in extent; and there is no provision for carving out a homestead from lands of greater value or extent.—*Garner v. Bond*, 61 Ala.

88; *Miller v. Marx*, 55 Ala. 335.; *Farley, Spear & Co. v. Whitehead*, 63 Ala. 303. By statutory provisions, the area of a homestead has been extended to 160 acres, when in the country, but the value has not been increased; and express provision is made for carving a homestead out of lands greater in value or extent. A mortgage, or other alienation of the constitutional homestead, by the husband alone, is a nullity—is absolutely void, and neither confers nor divests any rights; but, as to the extended statutory homestead, it is only made exempt from the payment of debts after the passage of the statute, and the husband's alienation of it is not void. Here, the lands contracted to be sold exceeded the limit of a homestead as secured by the constitution, both in value and in area; and while the wife may have a right to claim a statutory homestead in the premises, there is no reason why the contract should not be enforced against the husband, as to the residue of the tract, if the contract is found to be fair, just, and reasonable in all its parts. Adams' Equity, 77, 86. (2.) The contract was signed by the party sought to be charged, and that is sufficient to meet the requirements of the statute of frauds.—Code, § 2121; *Chambers v. Ala. Iron Co.*, 67 Ala. 357; Waterman on Spec. Performance, §§ 230, 239; 7 Vesey, 265; Browne on St. Frauds, § 366; *Randall v. Latham*, 36 Conn. 48; 3 Johns. 60; *Allen v. Bennett*, 3 Taunt. 169; *Hatton v. Gray*, 2 Ch. Cas. 164; 9 Vesey, 351; 1 Edw. Ch. 1. (3.) That an optional contract may be enforced against the party giving the option, see Waterman on Spec. Performances, § 201.

WM. COOPER, and J. B. MOORE, *contra*.—(1.) A conveyance of the homestead by the husband alone is an absolute nullity, neither conferring any rights, nor operating by way of estoppel against him.—*Crim v. Nelms*, 78 Ala. 604; *Miller v. Marx*, 55 Ala. 323; *McGuire v. Van Pelt*, 55 Ala. 344; *Halso v. Seawright*, 65 Ala. 431; *Slaughter v. McBride*, 69 Ala. 510; *Alford v. Lehman*, 76 Ala. 526. (2.) The alleged contract is wanting in mutuality—never was binding on the complainant, and could not be enforced against him.—*Derrick v. Monette*, 73 Ala. 75; *Moon v. Crowder*, 72 Ala. 80; *Comer v. Bankhead*, 70 Ala. 137; 30 Ala. 366; *Eskridge v. Glover*, 5 S. & P. 264; *Irwin v. Bailey*, 72 Ala. 467; *Marble Co. v. Ripley*, 10 Wall. 359; Fry on Spec. Performance, § 286; Waterman on Spec. Performance, §§ 178, 196–98. (3.) An optional contract is wanting in mutuality, and will not be specifically enforced.—1 Johns. Ch. 282, 370; Waterman on Spec. Performance, § 200.

[Moses v. McClain.]

STONE, C. J.—The present suit is a bill for specific performance of a contract of sale of one hundred and twenty acres of land, alleged to have been entered into in October, 1886. The undisputed facts are, that McClain was at the time a married man, residing on the lands as his homestead; that he alone entered into the agreement of sale to Moses, without the concurrence of his wife; and that when called on to consummate the sale, a day or two after the agreement, he declined to do so, giving as a reason that his wife would not consent to join in the execution of said conveyance, or sign the deed for said lands. The contract price for the purchase of said lands was eight thousand dollars—three thousand in cash, and the residue in one and two years, with interest from the date of possession.

After averring more than one demand made on McClain, once in writing, to execute said contract of sale, and his continued refusal, the bill contains the following offer and averments: "Orator avers that he is willing to relinquish so much of his rights under said contract, as would entitle him to a conveyance of a complete estate in *fee simple* in and to said lands, so far only as refers to any right or estate in dower or otherwise, which the said McClain's wife might now or hereafter have in and to said lands, and to dispense with the joining of said wife of said McClain in the execution of said deed; and he hereby offers, if the said McClain will execute to him a proper deed of conveyance to and for said lands, conveying only his own estate therein, and title thereto, to accept the same as a compliance by the said McClain with his said contract, and at the same time to comply in all things with the stipulations and terms mentioned in said contract, on his part to be performed."

The written offer referred to contains the following clause: "I stand ready to pay you the first installment in cash, say three thousand (3,000) dollars, on approval of deeds to the one hundred and twenty acres of land, more or less, named in said contract, and to make the two notes for $2,500 each, with interest to (from) date, from the day you give legal possession, not to be later than the first day of March, 1887." This letter is made part of the bill, as an exhibit. It must, then, be treated as the offer which Moses made to accept a modified performance of McClain's contract of sale. The bill avers that the price, eight thousand dollars, was the fair and reasonable value of the lands.

Interpreting the averments of the bill, and the written offer made an exhibit, in the light they shed on each other, the offer made by Moses contained three conditions: First, an offer to pay three thousand dollars cash, "on approval of

[Moses v. McClain.]

deeds." Second, the deed to convey "one hundred and twenty acres of land, more or less, named in the contract." The description in the contract is as follows: "My lands and improvements near Sheffield, and known as my home place, containing 120 acres, more or less." Third, possession to be surrendered not "later than the first day of March, 1887." These are the terms on which Moses, by his bill, offers to accept a modified measure of performance of the contract he made.

Conceding that McClain's contract is binding on him, and taking all the averments of the bill to be true, to what extent can the contract he made be specifically enforced? To what extent can he comply with the terms of his contract, without the concurrence and voluntary signature and assent of his wife, given as the statute requires?

Under the constitution of 1868, and the act "to regulate property exempted from sale for the payment of debts," approved April 23, 1873—Sess. Acts 1872-73, p. 64 – the question came before the court, whether the exemption extended to and embraced a homestead which, after reducing it to the lowest practicable quantity, still exceeded two thousand dollars in value. We held that it did not, and that the law had provided no method for carving a homestead, or its equivalent, out of property thus circumstanced. Still, our ruling under that statute was, that if by division a homestead, either in city, town, or country, could be so separated from the residue of the land, as to reduce its value to a sum not exceeding two thousand dollars, then such separated portion would be exempt.—*Miller v. Marx,* 55 Ala. 323; *McGuire v. Van Pelt, Ib.* 314; *Watts v. Burnett,* 56 Ala. 340; *Farley v. Whitehead,* 63 Ala. 295.

By the act approved Febuary 9, 1877,—Sess. Acts 1876-77, p. 32, —the defect in the older statutes was remedied, and it was provided that where, by reason of excessive value, the homestead can not be carved out by division, its equivalent in money is secured to the owner and occupant thereof. Code of 1876, § 2832.

Taking the averments of the bill for our guide, the value of the lands sued for is eight thousand dollars,—four times the amount the law exempts as a homestead. It is conceded, in argument, that McClain, the defendant, is entitled under the statute,—Code, 1876, § 2820,—to have his homestead carved out and secured to him "from levy and sale under execution, or other process for the collection of debts;" but it is denied that he can not sell and convey the same. Section 4 of the act, section 2821 of the Code, answers this argument. It declares, "'The exemptions authorized by

this act shall not affect any deed or mortgage, or other lien on such homestead property; but no mortgage, or other alienation of any homestead exempted by this act, by the owner thereof, if a married man, shall be valid as to such homestead, without the voluntary signature and assent of his wife," taken and certified as the law prescribes. We have uniformly ruled that a conveyance of the homestead by the husband, without the voluntary signature and assent of the wife, properly certified, is not only inoperative as to the wife, and pending her life and the minority of the children, but is absolutely void, even as against the husband, as a conveyance of title, either present or prospective. *Miller v. Marx,* 55 Ala. 322; *McGuire v. Van Pelt, Ib.* 344; *Halso v. Seawright,* 65 Ala. 431; *Seaman v. Nolen,* 68 Ala. 463; *Slaughter v. McBride,* 69 Ala. 510; *De Graffenreid v. Clark,* 75 Ala. 425; *Alford v. Lehman,* 76 Ala. 526.

It will be observed that the offer of Moses to consummate the purchase on his part was placed on three conditions. The first was McClain's deed, to be approved. The second was, that the deed should convey the entire tract of 120 acres; and the third was, that Moses should obtain possession not later than March 1, 1887. An insuperable obstacle in the way of such specific performance as complainant claims is, that if McClain executed the deed demanded, it would vest in Moses no title whatever, either present or prospective, as to that part of the land which is covered by the homestead, not exceeding two thousand dollars in value. As to this, the deed would be void as a muniment of title. It would confer no right of entry; and if Moses attempted to enter under such conveyance, he would, as to the area covered by the homestead, be a trespasser. Would the covenants, express or implied, impose no liability on the grantor? That question has never been before us; but is it different from any other conveyance a grantor may make of lands he has no authority to convey? Chancery will not, and can not, compel the specific performance of a covenant to convey, when the covenantor has neither the right nor the power to convey. It will leave the parties to such remedy for the breach of covenant as the law affords.— 3 Pom. Eq. § 1405, and notes.

What we have said above must be confined to this case, which, by the very terms of the complainant's offer, was at last but a proposition to accept McClain's deed to the entire tract of one hundred and twenty acres. The language of the bill is given above. That language can not be interpreted as an offer to accept McClain's conveyance of the residue of the tract, outside, and in excess of the homestad

exemption. It demands a deed to the entire tract, agreeing to surrender only the interest and title which were in Mrs. McClain. The title to the homestead was not in her. It was in her husband, but he was without power to convey it, without her voluntary signature and assent. We have shown that equity will not, and can not, compel McClain to execute a deed to lands he has no power to convey; and the complainant has not expressed a willingness to accept such partial performance as the defendant is able to comply with and execute. The complainant's bill, as framed, is therefore without equity.

We need not inquire to what extent complainant is entitled to relief, and in what form he can assert his right. 3 Pom. Eq. §§ 1405–7, and notes. What we do decide is, that the bill, as framed, is without equity.

There is another question raised by the demurrer, and pressed in argument, which we consider it our duty to notice. It is contended that, even if McClain bound himself to convey, by a writing which takes the case out of the statute of frauds so far as he is concerned; yet Moses, the covenantee, bound himself by no writing; and that not being bound himself, he can not, in this form of proceeding, hold Mc-Clain bound. The contention is, that the contract not being mutually binding, chancery will not compel its specific performance.

Mutuality is frequently said to be one of the conditions of a rightful suit for specific performance. The authorities, however, do not carry it to the length contended for. Where the contract is fair, just, and reasonable in all its parts, and the party sought to be charged has so bound himself as to meet the requirements of the statute of frauds, the election of the other contracting party to treat the contract as binding, and to enforce it, meets all the requirements of the rule.— *Wilks v. Ga. Pac. R. R. Co.*, 79 Ala. 180 ; 3 Pom. Eq. § 1405, and notes ; Waterman Spec. Perf., § 201 ; Fry Spec. Perf., § 294 ; Pom. Contr., § 170.

The decree of the chancellor is affirmed.