# Lampkin v. Stout, et al.

### Bill to Enjoin Foreclosure of Mortgage.

(Decided December 21, 1916. Rehearing denied February 15, 1917.
74 South. 239.)

1. **Mortgages; Tender of Payment; Attorney's Fees.**—A tender of the amount due on a mortgage, except a reasonable attorney's fee therein provided for, is insufficient, where the mortgagor failed to establish that the mortgagee agreed to postpone the time of payment.

2. **Mortgages; Payment of Interest; Sufficiency of Evidence.**—That only one-quarter's interest on a mortgage remained unpaid held established by direct testimony and a letter from the mortgagee's attorney demanding that amount of interest.

3. **Mortgages; Foreclosure Under Power of Sale; Temporary Injunction.**—Where a mortgagor's bill offered to pay any amount found due, she was entitled to the continuance of a temporary injunction, restraining exercise of a power of sale under the mortgage.

(McClellan and Mayfield, JJ., dissent in part.)

APPEAL from Morgan Chancery Court.

Heard before Hon. JAMES E. HORTON, JR.

Bill by Tennie S. Lampkin as administratrix against L. O. Stout and others to enjoin the foreclosure of a mortgage. From a decree dismissing complainant's bills he appeals. Reversed and remanded with directions.

[Lampkin v. Stout, et al.]

E. W. GODBEY for appellant. WERT & LYNNE for appellee.

McCLELLAN, J.—On May 22, 1911, R. B. White and wife executed to S. W. Irwin and L. O. Stout a note and mortgage for a $800 loan, payable on May 22, 1912. On October 26, 1911, A. B. Lampkin, since deceased, bought from White the land described in the mortgage, assuming the mortgage debt, upon the principal of which White had made no payment, and gave his note for a like principal sum, payable 90 days after February 22, 1913, on which, with Lampkin, White became a joint obligor. All the parties regarded the debt as bearing interest at 8 per cent., payable quarterly from the date of the first note. Lampkin paid quarterly ($16) during his life, and after his death the appellant, his widow, made one payment in that sum. On February 28, 1914, Stout, who in September, 1911, had acquired all of Irwin's interest in the mortgage debt, delivered the note and mortgage to attorneys Wert & Lynne for collection. Through a letter dated February 28, 1914, they notified Mrs. Lampkin of this fact, and requested payment to avoid foreclosure. The total amount due was stated in the letter to be $900, which included an attorney's fee, claimed under provisions of the mortgage, amounting to $81.17. The day the letter was written was Saturday; and it is a matter of dispute when Mrs. Lampkin received this letter. On March 3, 1914, these attorneys posted notices of the foreclosure sale under the power contained in the mortgage. The foreclosure contemplated was restrained by temporary injunction issued on bill filed by Mrs. Lampkin on March 3, 1914.

The complainant's contention is that after receipt of the letter dated February 28, 1914, and before the notices of foreclosure were posted, she effected a legal tender to Stout's attorneys of $818 in full of all that was demandable under the mortgage at that time, a sum that did not include the attorney's fee. She insists that no attorney's fee was demandable under the mortgage for the reason that she had, before the papers were turned over to the attorneys, expressly advised the mortgagee of her unconditional willingness and readiness to pay the whole indebtedness, and that he lulled her into inaction to this end by telling her he was in no hurry for the money. She also contends that her tender was adequate, covering the entire principal and interest demandable on that date. The chancellor concluded that the burden of proof resting upon her was not discharged, and dismissed her bill.

Whether the tender was sufficient in amount depended upon these subjects of controversy between these parties, viz: (a) Whether the interest had been paid up to November 22, 1913; and ·(b) whether an attorney's fee was demandable under the provision of the mortgage to that end, the collection of the indebtedness having been committed to the attorneys before the date of the tender, unless the complainant sustained her contention on the facts that her failure to pay was invited by the mortgagee's remark that he was in no hurry for his money.

(1) As to the attorney's fee: After a careful consideration of the whole evidence, our opinion is that the complainant has not discharged the burden of proof assumed by her in this connection. There is the greatest doubt, to say the least of it, whether she did not couple her expression of willingness and readiness to pay the debt and accrued interest with conditions foreign to any obligations resting on the mortgagee. That she had not paid the past-due obligation is plain. That she had some idea of duties on the part of the mortgagee that did not exist cannot be doubted when the whole evidence is viewed. That the mortgagee did not intend to lull her into inaction in the premises is strongly supported by the fact that he would derive no benefit from such a process—he would receive none of the attorney's fee; and he is shown not to have had any desire to own the land covered by the mortgage. The provision in the note and mortgage for the payment of a reasonable attorney's fee was in the nature of an indemnity; and when the indebtedness was not paid, under the circumstances shown by this record, the mortgagee was within his rights in committing its collection to his attorney; and the indemnity borne by the mortgage was and is available to protect him.—*Faulk v. Hobbie Co.*, 178 Ala. 254, 265, 59 South. 450. There was no tender of any sum on account of the provision for an attorney's fee. Hence the tender was deficient in that respect.

(2) The other point of controversy revolves about this inquiry: Was the interest paid up to November 22, 1913? The total interest, from the beginning to the date stated, was $160, making, when divided, ten installments of $16 each. On his examination as a witness, the mortgagee admitted the receipt of $144 from White, A. B. Lampkin, and Mrs. Lampkin. In his answer to interrogatory 5, he says A. B. Lampkin only made five interest payments of $16 each. Seven checks, for $16 each, given

by A. B. Lampkin to the mortgagee and canceled by him, are reproduced in this record. That they were given as quarterly payments of interest on this indebtedness cannot be reasonably doubted, even if, as we do, the check stub (Exhibit G) and the book memoranda (Exhibit H) are eliminated from consideration. Mrs. Lampkin paid $16 after her husband's death. So the Lampkin payments amounted to $128. This reduces the issue to this: Whether White paid the interest from May 22, 1911; Lampkin buying the land and presumably assuming the debt on the last days of October, 1911. White testified that he gave two checks for interest. If so he did, the interest was paid by him from May 22 to November 22, 1911; and, if this true, the payments made by the Lampkins satisfied the interest up to November 22, 1913. Undoubtedly the agreement was that the annual interest was payable quarterly. Such seems to have been the practice. Six of the seven checks given by A. B. Lampkin were dated on days corresponding to these quarterly periods. The conclusion that the interest was paid up to November 22, 1913, is further supported by the letter written by the mortgagee's attorney to Mrs. Lampkin on February 28, 1914. All the information the attorney then possessed as to the amount due must have been derived from the mortgagee and the papers delivered to him by the mortgagee. The letter fixed the amount of the indebtedness then due at "nine hundred dollars, including interest and attorney's fees." The testimony of the attorney shows that this sum included the sum of $817, principal and interest, and $81.77, attorney's fee. If the amount of the attorney's fee ($81.77) is deducted from the $900 stated in the letter, as the whole sum of the claim at that time, it will be seen that the attorney's calculation was based upon the assumption, at least, that there was only approximately three months' interest in arrears. We think it is proper to conclude that the mortgagee so advised his attorney when he turned the matter over to him for attention. So, on the date of the effort to make the tender the indebtedness was $800, principal, and interest from November 22, 1913, together with a reasonable attorney's fee for the services rendered by the mortgagee's attorneys. As stated, the tender was insufficient. If our calculation is correct, it would have been sufficient that Mrs. Lampkin tendered a reasonable attorney's fee for services rendered up to that time. It results that the complainant was not entitled to the temporary injunction restraining the exe-

cution of the power of sale under the mortgage. But it was error in the chancellor to dismiss her bill out of court, since in her amended bill she had offered "to pay any amount that may be found due, and to do equity as the court may direct."

There is nothing in the case of *Security Loan Association v. Lake,* 69 Ala. 456, 460, which required the complete dismissal of this bill to redeem from an unforeclosed mortgage.

The complainant was entitled to redeem, and the court was in error in dismissing the bill.

The entire costs accruing from or about this appeal will be equally apportioned between and paid by the appellant and the appellee.

Reversed and remanded, with directions.

(3) All the Judges concur in the foregoing opinion. ANDERSON, C. J., and SAYRE, SOMERVILLE, GARDNER and THOMAS, JJ., are of the opinion that the court erred in dissolving the temporary injunction, basing their view upon *Whitley v. Dunham Lumber Co.,* 89 Ala. 493, 479, 7 South. 819. MCCLELLAN and MAYFIELD, JJ., are of opinion that the court did not err in dissolving the temporary injunction, because special ground alleged for its issuance was not sustained in the proof.—1 High on Injunctions (4th Ed.) § 461. MCCLELLAN, J., entertains the view that *Whitley v. Dunham Lumber Co., supra,* is not authority for a contrary conclusion.