4 So.2d 897

### GRAHAM v. O'NEAL et al.
### 4 Div. 179.

Supreme Court of Alabama.

Dec. 4, 1941.

Murphy & Cook, of Andalusia, for appellant.

Edw. F. Reid, of Andalusia, for appellees.

74

FOSTER, Justice.

This is a bill filed by appellant, and seeks to exercise the equity of redemption in a certain mortgage on real estate in Andalusia, executed by Claude Wright, dated January 5, 1937, for the sum of $1,300, to secure fifty-two promissory notes in the principal sum of $25 each, and each bears interest at six percent. from date. The first was payable January 1, 1937, though that was prior to the date of the transaction. The others were payable on the first of each month thereafter. The mortgage was made to Dr. O'Neal, appellee.

By the sixth of December, 1937, several of the notes remained unpaid. On that day Claude Wright, the mortgagor, conveyed the property to complainant who made an agreement with him and with Dr. O'Neal to pay the balance of the installment notes. There was a transaction at Opp between the parties not material for consideration on this appeal except incidentally, but it is involved in this litigation.

The property at Andalusia and at Opp consisted of two gasoline filling stations. The arrangement was that for such amounts of gasoline as Dr. O'Neal should purchase during the month there should be an adjustment with him by which the excess of the amount of the note next maturing over the amount of such purchases should be paid in satisfaction of the note. By check dated January 28, 1938, such adjustment was made with a balance due Dr. O'Neal of $8.58 in respect to both stations on the note due January 1, 1938.

The next transaction was on March 25, 1938, after two notes had matured, one on February 1st and the other March 1, 1938. On said date of March 25th, appellant wrote a letter to Dr. O'Neal and enclosed two checks, one for $26.50, said to be in payment of the note due January 1, 1938, and one for $13.10 said to be in payment of the note due February 1, 1938. We think that the evidence sufficiently shows that confusion occurs here as in the testimony of some of the witnesses.

The agreement of counsel on page 112 of the record is that the note due March 1st was not paid. But on page 100 Dr. O'Neal testified that originally there were fifty-two notes of $25 each: that fourteen were paid, leaving thirty-eight unpaid, and that the total principal sum unpaid is $950. Thirty-eight notes of $25 each would make $950. The letter accelerating payment (page 109 of the record) recites this is on account of default in paying the note due April 1st.

Appellant did not live in Andalusia, but had an employee operating the filling station there. After the note due April 1st became due this employee sent to appellant at his home office in Atmore, Alabama, the amount of the unpaid purchases at the station by Dr. O'Neal. Deducting this amount from the note due on that date left a balance of $6.38. For this amount appellant wrote a check payable to Dr. O'Neal and sent it to his employee for delivery. But Dr. O'Neal paid his account at the filling station, and the check was returned to appellant and not offered to nor received by Dr. O'Neal.

The next occurrence was about "the middle part of April, 1938," when Dr. O'Neal placed the transaction in the hands of his attorney for collection. Soon afterwards he had an unsatisfactory conversation with a traveling salesman for appellant. Thereupon, on April 25, 1938, this attorney wrote to appellant and Claude Wright, calling their attention to the fact that the April 1, 1938, installment note was past due and unpaid, and that under the acceleration clause of the mortgage he declared all payments due and payable, and threatened foreclosure unless it was all paid with an attorney's fee. On April 29, 1938, appellant executed a check for the full amount of the April note, gave it to his agent for delivery to Dr. O'Neal. This check was offered to Dr. O'Neal and his attorney, and they refused to receive it.

Whether the note due March 1st has been paid or not, there is no dispute about the amount of the principal unpaid, or that at least one note was due and unpaid at the time they were all placed in the hands of an attorney for collection, and so remained at the time of the acceleration notice.

Thereupon a foreclosure notice was published beginning May 12th for the sale to occur June 10th. Before that date, appellant employed counsel, and they tendered to the attorney for defendant an amount which was approximately the full amount of the notes unpaid with interest, except it did not include an attorney's fee, nor expense of advertising. This tender was declined, whereupon this bill was filed June 6, 1938, and the amount of the tender was brought into court. There was no sale in foreclosure, pursuant to the notice.

Upon a consideration of the evidence, the court fixed the amount due at $1,406.17, and declared that appellant was personally liable for it, and ordered that the amount of the tender, to-wit, $1,034.25, be credited leaving a balance of $346.92, and allowed appellant thirty days in which to redeem the property by paying that amount, together with certain costs. In default of which a sale in foreclosure was ordered. During the examination of the witnesses counsel for appellant admitted the claims made for taxes and advertising fee, but denied the claim for attorney's fee.

The only provision in the mortgage for an attorney's fee was in event of a foreclosure under the power of sale. The notes contained a clause agreeing to pay all cost of collecting, including a reasonable attorney's fee whether collected by suit or otherwise. The mortgage contained a clause that if any part of the debt is not paid at maturity, then all of said notes and indebtedness shall at once become due and payable. The evidence of the attorneys in expressing their opinion as to the value of the attorney's services, answered a hypothetical question which included the defense of this suit. The amounts so expressed were from $100 to $150, except counsel for Dr. O'Neal, who said he felt like $200 would be a reasonable fee. As we make the calculations, the result reached by the court must have allowed an attorney's fee of approximately $200. The decree does not state the amount of each item, so allowed, nor the figures which entered into the calculation.

Dr. O'Neal filed answer and cross-bill. In it he claimed $200 as a reasonable attorney's fee. The cross-bill did not seek a foreclosure but a personal decree against appellant. But no such decree was rendered. He also filed a separate answer. The demurrer of complainant to the cross-bill was sustained. After the testimony was taken, the respondent amended his answer and cross-bill and refiled it to the bill as amended. There was no answer or demurrer, or decree pro confesso taken to it as amended and refiled, as respects this appellant against whom the personal judgment was sought. The issue thus made between appellant and Dr. O'Neal was on the bill as amended and answer to it.

We have stated the nature of the stipulations in the note and mortgage as to an attorney's fee. They are not sufficient to sustain a charge for defending this suit. Hylton v. Cathey, 225 Ala. 605, 144 So. 579; McGregor v. Shipp, 238 Ala. 221, 189 So. 740.

Moreover, the provisions in a note such as are here involved are said to be for indemnity to the payee and for his protection and reimbursement. Lampkin v. Stout, 199 Ala. 101, 103, 74 So. 239; Faulk & Co. v. Hobbie Grocery Co., 178 Ala. 254, 265, 59 So. 450; Tompkins v. Drennen, 95 Ala. 463, 466, 16 So. 638. They are not to be used to oppress the debtor.

If complainant shall comply with the power granted in a decree of redemption when the stipulations are as here set out, the only attorney's fee that should be charged to him is such sum as had been incurred at the time the bill was filed, although there is an unchallenged cross-bill seeking a foreclosure and attorney's fee for so doing, and seeking a personal judgment against complainant. Carwile v. Crump, 165 Ala. 206, 51 So. 744; Thomas v. Barnes, 219 Ala. 652(11), 123 So. 18; Hylton v. Cathey, supra; Kelly v. Carmicheal, 221 Ala. 371, 129 So. 81.

We have held that if redemption is not effected, and there is a foreclosure had pursuant to a cross-bill to that end, an attorney's fee for such foreclosure is a proper charge as a part of the cost of collecting the notes. Patterson v. Lovelady, 233 Ala. 554, 172 So. 646; Hylton v. Cathey, supra; McGregor v. Shipp, supra.

Since there is no cross-bill in this suit in which issue was joined, which

sought a foreclosure, there is nothing in the record which justifies an attorney's fee for foreclosing the mortgage. And the same is true insofar as the cross-bill sought a personal judgment.

The cases last cited above have no application. In them there was no contention made that the cross-bill ws not necessary and not justified by the situation. Whereas in Haralson v. Whitcomb, 200 Ala. 165, 75 So. 913, it was held that when a bill is filed to redeem, and offers in proper terms to do equity, a cross-bill seeking a foreclosure could not be sustained on attack made to its equity. This has been re-affirmed in Patton v. Birmingham Trust & Savings Co., 235 Ala. 586, 180 So. 264, and the principle noted also in Hinds v. Federal Land Bank, 235 Ala. 360, 179 So. 194.

 And a cross-bill is not necessary to secure a personal judgment against a debtor complainant who seeks to redeem. The right to a personal judgment in such an action is an incident to a foreclosure (Flagg v. Florence Discount Co., 228 Ala. 153, 153 So. 177), and is by virtue of section 6652, Code of 1923, Equity Rule No. 119½ (see 240 Ala. XVI) whereby when a decree of foreclosure is entered, ascertaining the amount of the indebtedness, it shall have the force and effect of a judgment, but execution must not issue and no personal judgment in form rendered by the court until after a sale and its confirmation, and the balance due is ascertained by decree. Winston v. Browning, 61 Ala. 80, 84; Johnson's Adm'r v. Ward, 82 Ala. 486, 2 So. 524; Baker v. Young, 90 Ala. 426, 8 So. 59; Hastings v. Alabama State Land Co., 124 Ala. 608, 26 So. 881; Hamill v. McCalla, 228 Ala. 281, 153 So. 412; Flagg v. Florence Discount Co., supra.

The most appropriate proceeding is a motion for an execution after confirmation of the foreclosure sale. Flagg v. Florence Discount Co., supra.

To illustrate further the want of prejudice to the respondent mortgagee from this legal status, we note that a voluntary dismissal by complainant of such a bill after answer filed is effective to cut off the right of complainant to file another bill to redeem and is treated as a dismissal on the merits unless the court shall otherwise order. Equity Rule 75, Code 1940, Tit. 7, p. 1105. Some authorities assert that such a dismissal has the effect of a strict foreclosure. 36 Amer.Jur. 791, section 198; 42 Corpus Juris 444. section 2285. And this would be the logical result, because a strict foreclosure cuts off the right of redemption, and so would such a dismissal, if not without prejudice, of a bill to redeem. Compare Segrest v. Segrest's Heirs, 38 Ala. 674; Johnson v. Smith, 190 Ala. 521, 526, 67 So. 401.

And it is necessary to have evidence of the value of the services which had been rendered, or which had been incurred by the mortgagee, for which he should be reimbursed within the terms of the instrument, since it did not fix such amount. Orr v. Sparkman, 120 Ala. 9, 23 So. 829.

But the court is not concluded by evidence which is but an opinion. Derzis v. Cox, 223 Ala. 517, 137 So. 306.

We think the amount of the attorney's fee was fixed without due regard to the foregoing principles, assuming that the mortgagee may have incurred a liability in that respect in any amount for which he should be reimbursed.

Reversed and remanded.

GARDNER, C. J., THOMAS, and BROWN, JJ., concur.