[Nashville, Chattanooga & St. Louis Railway Co. v. Hammond.]

tending to establish the truth of the replication, which the charge ignores.

The remaining charges, 3, 4, 5, and 6, each, ignore the facts relied on in the replications to the pleas of the defendant, on which issue was joined, and which there was evidence tending to establish.—*Liberty Ins. Co. v. Boulden*, 96 Ala. 508; *Western Ass. Co. v. Stoddard*, 88 Ala. 611; *Piedmont & Arlington Ins. Co. v. Young*, 58 Ala. 486; *Queen Ins. Co. v. Young*, 86 Ala. 431; *P. & M. Ins. Co. v Thurston*, 93 Ala. 257; *Planters' Ins. Co. v. Myers*, 55 Miss. 479.

Affirmed.

# Nashville, Chattanooga & St. Louis Railway Co. *et al.* v. Hammond *et al.*

## Statutory Action of Ejectment.

1. *Pleadings; presumption when the record does not contain any pleas.* Where the record does not contain any pleas of the defendant, but the judgment entry recites that issue was joined upon the pleadings, the presumption is that issue was joined upon the plea of the general issue; but where it is manifest from the entire transcript that the case was tried upon other issues than that of the general issue, although the record does not show any other pleas, this court, on appeal, will review the rulings of the trial court as. if such issues had been specially pleaded.

2. *Evidence; when deed admissible as color of title.*—In an action of ejectment, where the plaintiffs claim through mesne conveyances from one H., and it appears that H. went into possession of the lands sued for in the year 1851, and that he and those claiming under and through him, by regular conveyances, have been in continuous possession ever since, a deed executed in 1851, purporting to convey said land to H. is admissible in evidence as color of title

3. *Same; secondary evidence.*—Where, in an action of ejectment an original deed would have been competent evidence, a certified copy of said deed is admissible in evidence, where the party offering it testifies that at one time he had the original in his possession, but did not have it at the time of trial, and had made diligent search in the places where he kept his papers, and other places where he would be likely to find it, but did not find it, and did not know where it was.

[Nashville, Chattanooga & St. Louis Railway Co. v. Hammond.]

4. *Defective certificate of acknowledgment as attestation; when deed admissible.*—A certificate of acknowledgment of the execution of a deed, appended thereto, though substantially defective in form, may operate as an attestation by the officer as a subscribing witness; and a deed with such defective acknowledgment is admissible in evidence after death of the officer making the certificate, if it is shown that he was dead, and the genuineness of his signature has been fully established.

5. *Evidence; declaration of person in possession.*—The declarations of a person who is in possession of land, made in good faith, explanatory of his possession, and showing the character and extent of his claim to the property, are admissible in evidence as a part of the *res gestae*, whenever the fact of possession is pertinent to the issue, no matter who may be the parties in litigation.

6. *Same; burden of proof.*—Where, in an action of ejectment the plaintiff's evidence shows a legal title by regular conveyances from the former owner of the property sued for, and possession under such conveyances for ten years or more, the burden is on defendant to sustain his claim against the plaintiff's paper title, acquired by conveyance and possession.

7. *Adverse possession; charge of the court to the jury.*—In an action of ejectment, a charge to the jury that if those under whom defendant claims went into possession under a gift from him who was the common source of title of plaintiff and defendant, plaintiff can not recover unless he was in "possession under claim of right for more than ten years," is erroneous, for the reason that under its instruction more than ten years of adverse possession is necessary to give title.

8. *Charge to the jury; right-of-way.*—In an action of ejectment against a railroad company to recover a strip of land claimed by it as a part of its right-of-way, a charge to the jury that if the person who formerly owned the land, and under whom the plaintiff claims, in consideration that defendant's railroad would run the way it did, gave to defendant a right-of-way over his lands, then the law implies, in the absence of any agreement designating its amount, that a strip one hundred feet in width is meant, is erroneous.

9. *Same; same; adverse possession.*—In such an action, a charge which instructs the jury that "merely running a fence across defendant's road bed not then in use, or cultivating the same at broken intervals, does not, without more, constitute adverse possession in the plaintiffs," is erroneous as invading the province of the jury.

10. *Same.*—In such an action, a charge that if one under whom plaintiff claims gave defendant a right-of-way over his lands, if it would build the road on a certain line, and defendant did so, locating the line of its road, staking and cutting out the right-of-way, grading the road-bed ready for ties, and completed it as soon as it was able, such grading of the railroad and cutting out of the right-of-way, was the commencement of an adverse possession of said land by the

[Nashville, Chattanooga & St. Louis Railway Co. v. Hammond.]

defendant, and the defendant could not be ousted or disseized by its donor or his grantee, by fencing and cultivating said right-of-way, is erroneous and properly refused, where the uncontroverted evidence shows that the railroad was not completed for twenty-five years after the line was run and staked.

11. *Same; assuming as true a controverted fact.*—A charge to the jury which assumes as true one of the controverted facts in a case, or that instructs the jury that their verdict must be controlled by "a preponderance of the evidence," is properly refused.

APPEAL from the Circuit Court of Etowah.

Tried before the Hon. JOHN B. TALLY.

This was a statutory action of ejectment, brought by the appellees against the Nashville, Chattanooga & St. Louis Railway Company and Tennessee & Coosa Railroad Company, to recover a certain described tract of land, and was commenced on February 10, 1892. The property involved in this suit was a strip of land about one-half mile long and fifty feet wide, being the fifty feet next adjoining one side of the road-bed of the Tennessee & Coosa Railroad Company, which was claimed by the defendants to be the right-of-way of said company. This road was used and operated by the Nashville, Chattanooga & St. Louis Railway Company. The plaintiffs and defendants trace their titles from the same source.

On the trial of the case, as is shown by the bill of exceptions, the plaintiffs offered in evidence the record of a deed from one Thomas M. Barker to Richmond Hammond, conveying the property sued for, together with other lands. This deed was recorded in the book of deeds in the probate office of Etowah county. J. D. Hammond, one of the plaintiffs, testified that he, at one time, had the original of this deed in his possession, but did not have it at the time of the trial; that he had made diligent search among his papers and could not find the said original deed, nor did he know where it was. The defendant objected to the introduction of the record of said deed; the court overruled his objection and allowed the deed to be read to the jury as evidence of color of title, and the defendants duly excepted to this ruling. This deed bore date of January 17, 1851.

The testimony for the plaintiffs tended to show that the said Richmond Hammond went into possession of the property immediately upon the execution of the deed to him, and continued in possession thereof until his son,

W. C. Hammond, went into possession in 1854 or 1855, as owner by direction of said Richmond; and said W. C. Hammond continued to exercise acts of ownership over said land until the conveyance to him by deed. The plaintiffs then offered to introduce in evidence a certified copy of the deed executed by said Richmond Hammond to W. C. Hammond, March 27, 1861, conveying the lands involved in this controversy, and which was purchased by said Richmond Hammond from Barker. Upon the defendants objecting to the certified copy, on the grounds that the original had not been accounted for, the plaintiffs introduced John D. Hammond as a witness, who testified that he once had possession of the original deed, and had searched for the same in his house, and through his desk where his papers were usually kept, but had not been able to find the original; that this original deed was delivered to him when he purchased the lands conveyed therein from W. C. Hammond. Other witnesses also testified that at one time the said deed had been in their possession, and they too had made a thorough search for the same, but had not been able to find it. Upon this proof the plaintiffs offered the certified copy in evidence, and the court overruled the objection of the defendants, and the defendants duly excepted.

W. C. Hammond went into possession of the lands conveyed by this deed, and continued in possession thereof until he sold the said lands to J. D. Hammond. The plaintiffs then offered in evidence a deed from said W. C. Hammond and wife to J. D. Hammond, which was executed on December 26, 1872. The certificate of acknowledgment of this deed was in the following language: "The State of Alabama, Etowah county.—Before me, H. W. Pickens, an acting notary public in and for said county and State personally appeared W. C. Hammond and wife, E. W. Hammond, with whom I am personally acquainted with, and they have on the day and date the above conveyance was signed sealed and delivered, acknowledged the same to be their voluntary act this 4th day of December, in the year one thousand, eight hundred and seventy-two. [Signed.] H. W. Pickens, Notary Public & J. P." The plaintiffs then introduced one L. E. Hamlin as a witness, who testified that he knew H. W. Pickens, who certified to the acknowledgment of said deed; that the said Pickens was now dead,

and that the witness was acquainted with his handwriting, and that the signature "H. W. Pickens," to the certificate of acknowledgment of the deed offered in evidence was the handwriting of the said Pickens. The defendant objected to the introduction of said deed in evidence, upon the ground that there was no sufficient acknowledgment to the execution of said deed, and no proof that the deed had been executed. The court overruled this objection, allowed the deed to be read in evidence, and to this ruling the defendants duly excepted. Under this deed the said J. D. Hammond went into possession of the property conveyed therein, and continued in such possession until he conveyed the same, on February 14, 1876, to his children, who, with said J. D. Hammond, are the plaintiffs in this suit. This deed from J. D. Hammond to his children was introduced in evidence without objection. The evidence for the plaintiffs tended to show that the said Hammond had, from the date of the execution of said deed, been in possession of the property for his wife and children, up to the time of his wife's death.

The testimony for the defendants tended to show that this road-way was constructed in 1856 and 1857 ; that it was built through the land with the consent of W. C. Hammond, who owned the land at that time ; that the said Hammond, at the time of the survey of the road, stated to the representatives of the Tennessee & Coosa Railroad Company that, if they would build the road along a certain route indicated through his property, he would give them the right-of-way thereto ; that in obedience to this direction the road was built according to the route designated, and is now situated thereon ; that after the building of the road-way the said Tennessee & Coosa Railroad Company cleared its right-of-way of fifty feet on each side of the track, and exercised such acts of ownership over said right-of-way as was customary for railroads to do, and that the said company had been in possession thereof from that time to the present. In rebuttal to this evidence, the evidence for the plaintiffs tended to show that neither of the said Hammonds had ever conveyed by deed the right-of-way of fifty feet on either side of the track of the Tennessee & Coosa Railroad Company, and that neither of them had ever agreed with the railroad company that it should have the right-

of-way, of fifty feet on either side of the track ; that the several owners of the land through which this right-of-way ran had cultivated the land sued for at different times ; that their tenants had at times cultivated the same up to and including the road-bed, and that they had been in possession thereof continuously from the date of the execution of the deed from Barker to Richmond Hammond.

The charges which were given by the court. at the request of the plaintiff, are not set out in the bill of exceptions. The defendants requested the court to give the following written charges, and separately excepted to the refusal to give each of them as asked :   (1.) "If the jury believe from the evidence that defendants, or those under whom they claim, went into adverse possession of the road-bed and right-of-way in 1856 or 1857, then the fact that the tenants of plaintiffs or their vendors built a fence across the track and cultivated said track at intervals, their holding, adverse of itself, does not divest the title of defendants acquired by their adverse holding, if the jury believe they so held."   (2.) "If the jury believe from the evidence that those under whom defendants claim, went into possession of the lands in controversy, under gift of right-of-way from Wm. C. Hammond, then plaintiffs can not recover, unless they were in open, notorious and continuous possession under a claim of right for more than ten years before the bringing of this suit."   (3.) "If the jury believe from the evidence that Wm. C. Hammond, in consideration that the railroad would run the way it did, gave them a right-of-way over his land, then the law implies, in the absence of any agreement designating the amount, that a strip one hundred feet in width, or 50 feet each way from the center of the track is meant."   (4.) "Merely running a fence across the road-bed of defendants, not then in use, or cultivating the same at broken intervals, does not, without more, constitute an adverse possesession in the plaintiffs." (5.) "Plaintiffs have not shown such paper title as entitles them to recover, unless they were themselves in adverse possession of the lands sued for, openly, notoriously and continously, and in hostility to defendants or those under whom they claim for more than ten years before the bringing of this suit."  (6.) "If the jury believe from the evidence that defendants, or those under whom

[Nashville, Chattanooga & St. Louis Railway Co. v. Hammond.]

they claim, put the road-bed and right-of-way where it now stands in consideration of the offer of William Hammond, to give them the right-of-way, if they would put it there instead of at another place where they had surveyed it, then this adverse possession begun at once, and is presumed to continue, and the burden is then on plaintiffs to show by a preponderance of evidence that it has terminated." (7.) "If the jury believe from the evidence that at the time of the making of the deed by John D. Hammond, in 1876, to his children, defendants, or those under whom they claim, were in adverse possession, then said deed is absolutely void, and plaintiffs can not recover." (8.) "If the jury believe from the evidence that at the time of the execution of the deed from W. C. Hammond and wife to J. D. Hammond and wife, in 1876, defendants or those under whom they claim were in adverse possession, then said deed is void, and plaintiffs can not recover." (9.) "The court charges the jury that if they believe from the evidence that the said W. C. Hammond gave the Tennessee & Coosa R. R. Co. a right-of-way over his land, if it would build the road on a certain line, and the R. R. Co. did locate the line of its road on said line, did stake and cut out the right-of-way, and did grade the railroad ready for cross-ties, and did complete the railroad from Gadsden to Guntersville as soon as it was able, then such grading of railroad and cutting out of right-of-way was the commencement of an adverse possession of the same by the railroad company, and it could not be ousted or disseized by W. C. Hammond by fencing and cultivating said right-of-way. And if the jury believe from the evidence that the said Hammond did not notify said company either by words, or some other acts other than the fencing and cultivating said right-of-way, then he did not hold the land in adverse possession to Tennessee & Coosa R. R. Co. And the same results will apply to J. D. Hammond and the other plaintiffs, if the jury believe from the evidence they did nothing more than rent out, fence and cultivate the land, and in such case the verdict of the jury should be for defendants." (10.) "The court charges the jury that, if they believe from the evidence that W. C. Hammond gave the right-of-way to the Tennessee & Coosa Railroad Co., provided that the company would build the railroad on a certain line, and the com-

pany did grade the road, did cut the right-of-way one hundred feet wide, and put down the pegs, then this gave the company an easement of right-of-way over said land, and the same was adverse to said easement against said Hammond, and the fact that Hammond merely fenced the right-of-way and cultivated the same, then these acts did not constitute an adverse possession in Hammond, unless he gave company notice that he intended to hold the right-of-way adverse to company, and held it in adverse possession for ten years; and if Hammond has not given such notice, then the railroad company could terminate such use and possession of Hammond, when it needed the right-of-way for railroad purposes, and in such case the jury should find for the defendants."

There were verdict and judgment for plaintiffs. The defendants appeal, and assign as error the several rulings of the trial court, to which exceptions were reserved.

OSCAR R. HUNDLEY and W. H. DENSON, for appellant.

DORTCH & MARTIN, *contra*.

COLEMAN, J.—This is a statutory action of ejectment, instituted by appellees to recover a certain parcel or strip of land described in the complaint. The record proper does not contain any plea of the defendants. The judgment entry is, "come the parties by attorneys and issue being joined, thereupon came a jury," &c. The presumption is that issue was joined upon the general issue. There is a recitation in the bill of exceptions "that issue was joined upon the pleas of the statute of limitations of twenty years and of ten years, and not guilty." Pleadings and the action of the court upon them do not constitute a part of the bill of exceptions. They should appear in the record proper.—*Powell v. Henry,* 96 Ala. 412; *Beck v. West & Co.,* 91 Ala. 312; *Powell v. State,* 89 Ala. 172; *Steed v. Knowles,* 97 Ala. 573. Where it is perfectly clear from the entire transcript that the case was tried upon other issues than that of the general issue, although the pleadings did not show them, this court has reviewed the rulings of the primary court, growing out of such issue.—*R. & D. R. R. Co. v. Farmer,* 97 Ala. 141.

The plaintiffs claim title by mesne conveyances from Richmond Hammond. The evidence shows that Richmond Hammond went into possession in the year 1851, and that introduced by the plaintiffs tend to show that he and those who claim under and through him by regular conveyances have been in continuous possession ever since. The court did not err in admitting the instrument, dated in the year 1851, signed by Barker, which purported to convey the lands to Richmond Hammond. It was offered merely as color of title. The grounds of objection are not stated, and when considered in connection with the proof that Richmand Hammond went into possession in the year 1851 under his purchase from Barker, we can see no objection to it as evidence of color of title.

The proof of the loss of the original deed, from Richmond Hammond to W. C. Hammond, dated in 1861, was sufficient to authorize the introduction of a certified copy. The court did not err in admitting the certified copy of the conveyance recorded in the probate office.

There was no error in admitting in evidence the deed of W. C. Hammond, executed in 1872, to John D. Hammond and his wife, Fannie Hammond. The acknowledgment in some respects may have been defective, but the signature and certificate of the magistrate was sufficient as an attesting witness.—*Torrey v. Forbes*, 94 Ala. 135; *Merritt v. Phenix*, 48 Ala. 90; *Sharpe v. Orme*, 61 Ala. 268; *Rogers v. Adams*, 66 Ala. 600. It was shown at the trial that he was then dead, and his handwriting and the genuineness of the signature was fully established.

Declarations of a party in possession of land, of the character in which he holds, made in good faith, are admissible in evidence upon an issue of disputed ownership, no matter who may be the party to the litigation.— *Daffron v. Crump*, 69 Ala. 79; *Jones v. Pelham*, 84 Ala. 210; *Humes v. O'Bryan*, 74 Ala. 64; *Lucy v. Railroad Co.*, 92 Ala. 250; *Steed v. Knowles*, 97 Ala. 573. The declarations of W. C. Hammond offered in evidence come within this rule. The defendants' evidence tended to show that W. C. Hammond agreed in parol that, if plaintiffs would grade their road on a certain line, he would give them the right-of-way; that in pursuance of this agreement the defendants and those from whom

they derive title constructed their railroad on the line designated; that they took possession of the right-of-way, one hundred feet in width, under said agreement in the year 1854, and have held adverse, continuous possession ever since, claiming the same in their own right. This evidence is controverted by the plaintiffs, both as to the agreement and as to the possession. The road-bed is not sued for, but the complaint embraces the land within fifty feet from the centre of the track and to the margin of the road-bed.

The charge given by the court, and the instruction given for the plaintiffs, though excepted to, are not in the record, and we can not review them. Only the charges requested by the defendant and refused by the court are before us and subject to review.

Titles to land do not pass by a mere parol gift, and possession under a parol gift for a period of time less than ten years of adverse holding can not defeat a recovery by the alleged donor or grantor, holding the legal title. The plaintiffs' evidence showed a legal title by regular conveyances from W. C. Hammond, and possession thereunder for ten years. In such cases the burden is on the defendant to sustain the claim against plaintiffs' paper title, acquired by conveyance and possession.—*Steed v. Knowles*, 97 Ala. 573. The first charge refused is not clearly stated. As we understand it, the legal proposition is, that if the defendants were in adverse possession in 1856 or 1857, no subsequent possession of plaintiffs, of whatever character or length of time, could divest the defendant of any right acquired by their adverse possession held during these years.

Charge No. 2, refused, asserts the law contrary to what has been stated. It is faulty for the further reason that under it "more than ten years" of adverse holding is necessary to give a perfect title.

Charge No. 3 is misleading, and for this reason might have been refused. It is faulty in this, that it asserts that a grant of the right-of-way to a railroad, without description, implies that the grant embraces a width of one hundred freet. In condemnation proceedings the statute limits the right-of-way to such "lands as may be *necessary*, not exceeding one hundred feet in width."— Code of 1886, § 1580, subdiv. 8; *Ala. Midland Ry. Co. v. Brown*, 98 Ala. 647. Charge 4, invades the province of

the jury, and asserts a contrary proposition to that declared in this opinion.

Charge No. 5 was misleading, and clearly invaded the province of the jury. This charge is also subject to the criticism placed upon charge 2, in that it requires an adverse holding of "more than ten years." It does not assert the law applicable to the facts of this case, where it appears the defendant had no paper title, and to defeat plaintiffs' recovery, it was necessary to show a legal title acquired by adverse possession.

The proposition of law asserted in charge 6 is contrary to the principles declared in this opinion, and is further objectionable, in that it assumes as true a fact controverted—that William Hammond did offer to give the right-of-way in consideration, &c. A charge which instructs the jury that their verdict must be controlled by "a preponderance" of evidence may be refused.—*Vanderventer v. Ford,* 60 Ala. 610; *Acklen v. Hickman, Ib.* 568; *Street v. Sinclair,* 71 Ala. 111.

Charges 7 and 8 ignore the evidence tending to show continuous possession by plaintiffs from and after 1876 to 1891, a period of more than ten years. In addition, the evidence shows that W. C. Hammond executed a deed in the year 1872, and not 1876. Charges 9 and 10 were properly refused. They are argumentative and misleading, and invade the province of the jury. The uncontroverted evidence shows that the road was not constructed through, for about a quarter of a century or more, after the line was run out and staked. The plaintiffs, if their testimony is believed, exercised many acts of ownership not predicated in the charges.

We find no error in the record.

Affirmed.