82 So.2d 236

C. C. RHODES

v.

W. B. SCHOFIELD.

4 Div. 839.

Supreme Court of Alabama.

Aug. 18, 1955.

J. C. Fleming, Elba, for appellee.

Baldwin & Baldwin, Andalusia, for appellant.

PER CURIAM.

This is an appeal from a final decree in equity rendered on a trial heard on testimony given ore tenus before the trial judge.

The bill of complaint was filed by a married man and sought to vacate a mortgage alleged to have been executed by complainant and his wife to respondent to secure an alleged indebtedness of $5,000, borrowed for the purpose of paying to a corporation then being organized, the consideration for capital stock issued to him at the time.

The bill first alleges that complainant and his wife did not execute (sign) the mortgage at all, but complainant does not seem to rely on that contention at this time. There is no doubt but that he and his wife did sign the instrument. In the alternative, the bill alleges that the mortgage was without consideration (this is not supported by

the evidence), and that there is no due date of the note which is secured by the mortgage and it is not in default. The theory on which that contention is based is that the note, secured by the mortgage, recites: "In terms as stated below, I or we promise to pay to the order of W. B. Schofield (respondent) five thousand and no/100 dollars for value received, in lawful money of the United States, without interest payable at the First National Bank of Opp, in Opp, Alabama." It then contains provisions waiving exemptions and for an attorney's fee, after which is the following: "The above sum of five thousand dollars ($5,000.-00) to be paid by C. C. Rhodes (the complainant) from his share of the profits from the operation of the Opp Livestock Market as said business concern shall ear(n) [sic] profits." The bill alleges that respondent has advertised the land for sale under the power given in the mortgage. It prays for a cancellation of the mortgage and offers to do equity, but does not seek an injunction of the sale.

An amendment to the bill alleges that the land described in the mortgage (which consists of 105 acres) was occupied by complainant as a homestead at the time of the purported execution of the mortgage; that it purports to be acknowledged before J. C. Rodgers as a notary public in said county; that at that time said Rodgers was not a duly commissioned notary public in said county and had not executed an official bond, and that the mortgage is void for want of proper acknowledgment before an officer authorized by law. It then alleges that respondent has proceeded with a foreclosure sale of the land under the power contained in the mortgage, and at the sale J. M. Chambers became the purchaser; that he has conveyed his interest so acquired to the respondent, and that the sale to Chambers and by him to respondent are clouds on his title and should be cancelled, with prayer for such cancellation and for general relief.

There was no demurrer to the bill as finally amended, but there were answer and cross bill. They admit that complainant and his wife resided on the land as a homestead when the mortgage was executed. Respondent neither admitted nor denied that Rodgers was a duly qualified notary public. (The court found that he was not duly qualified.)

The cross bill alleges that the land included in the mortgage was of the value of $6,000 at the time of the execution of the mortgage, to wit, November 16, 1948; that the land to the extent the homestead exceeds in value $2,000 is subject to said mortgage and as to it the mortgage is not invalid by the failure to have a proper acknowledgment by the wife; that if the mortgage was not duly witnessed or acknowledged, it operates as an agreement to make a valid mortgage to the extent that the land was worth more than $2,000 at that time. It prays that on final hearing the value of the land be appraised and that a homestead of the value of $2,000 be carved out of it and the remainder be subjected to cross complainant's debt, and for general relief. Complainant's answer to the cross bill merely denies in general terms its allegations.

From the evidence taken before the trial judge, he found in substance that complainant's wife signed the mortgage before an officer (Clarence Byrd) who did not certify to an acknowledgment and did not sign it as a witness. That complainant then took it to J. C. Rodgers, "purporting to be a notary public, although in fact he was not such a notary", and complainant "at said time placed his signature on said instrument": that he then took the instrument bearing his signature and that of his wife and delivered the same with the note to respondent. "The court further finds from the evidence that said instrument, namely, said purported mortgage, was not witnessed nor was any acknowledgment taken of C. C. Rhodes (complainant) by any person authorized to do so, the said J. C. Rodgers not being a notary public, and that the said Clarence Byrd never certified, as required by law, the acknowledgment of Mrs. O. B. Rhodes."

The court found other facts not controverted nor material here to rehearse, and decreed:

(1) The purported mortgage was not duly executed as such and is ineffective to the extent that the land is exempt as a homestead; and not properly executed as a mortgage to the extent that the land exceeds in value $2,000.00, but to that extent it is effective as a contract to execute a mortgage.

(2) That a lien was thereby impressed on such excess.

(3) A personal judgment against complainant was rendered for $5,000.

(4) The foreclosure under the power of sale was declared null and void.

(5) The foreclosure deed was cancelled.

(6) That complainant has thirty days in which to pay said debt of $5,000.00 and the costs of court.

(7) If said debt is not paid in thirty days, the register will hold a reference and report:

(a) The amount of any mortgage indebtedness to the Federal Land Bank secured by a mortgage on all of said land.

(b) The market value of it all on November 16, 1948, "as though no mortgage had been placed thereon".

(c) Describe a homestead as of November 16, 1948 not exceeding in value $2,000.-00 out of said land, taking into consideration a mortgage, if there is one to the Federal Land Bank, guided by the selection of complainant.

(d) Describe land not included in the selected and approved homestead, also the amount of the mortgage, if any, to the Federal Land Bank that should be charged against said area not so selected.

(8) Further orders and relief were deferred.

### Assignment of Error No. 1

Under this heading appellant contends that a personal judgment was improperly rendered against him for $5,000, and bases his argument to that effect upon two propositions: (1) that the note secured by the mortgage was only payable upon a contingency which is not shown to have occurred, and (2) that the debt is payable only out of a certain fund and has no other effect.

Before reaching that contention, we should call attention to the fact that in case of this kind, whether it is a bill to redeem or to cancel a mortgage on the one hand, or to foreclose a mortgage on the other, a personal judgment is only authorized by Equity Rule 119½ (see pocket part Code 1940, Tit. 7 Appendix and 240 Ala. XVI).

With respect to that situation, we observed in the case of Graham v. O'Neal, 242 Ala. 72, 4 So.2d 897, 900:

"A cross-bill is not necessary to secure a personal judgment against a debtor complainant who seeks to redeem. The right to a personal judgment in such an action is an incident to a foreclosure (Flagg v. Florence Discount Co., 228 Ala. 153, 153 So. 177), and is by virtue of section 6652, Code of 1923, Equity Rule No. 119½ (see 240 Ala. XVI) whereby when a decree of foreclosure is entered, ascertaining the amount of the indebtedness, it shall have the force and effect of a judgment, but execution must not issue and no personal judgment in form rendered by the court until after a sale and its confirmation, and the balance due is ascertained by decree. Winston v. Browning, 61 Ala. 80, 84; Johnson's Adm'r v. Ward, 82 Ala. 486, 2 So. 524; Baker v. Young, 90 Ala. 426, 8 So. 59; Hastings v. Alabama State Land Co., 124 Ala. 608, 26 So. 881; Hamill v. McCalla, 228 Ala. 281, 153 So. 412; Flagg v. Florence Discount Co., supra."

It is of course well understood that when a mortgage is invalid and the mortgagor files a bill in equity to have it vacated on that account relief will be denied him unless he restores the consideration which he received from the mortgagee. Leonard v. Whitman, 249 Ala. 205, 30 So. 2d 241. But a personal judgment therefor is not due to be rendered against such a

complainant except as authorized by Equity Rule 119½, supra. To obtain the benefit of that rule it is not necessary that the cross bill pray for the judgment. Qualls v. Union Central Life Ins. Co., 242 Ala. 619, 7 So.2d 558. Therefore, a personal judgment should not have been rendered.

■ But when a personal judgment is the only error in the decree, it may be corrected on appeal to this Court and, as corrected, the decree in that respect will be affirmed. Winston v. Browning, 61 Ala. 80, 84; Baker v. Young, 90 Ala. 426, 8 So. 59.

We shall now consider appellant's propositions 1 and 2, supra, in this connection. The trial court found that no profits had been earned by the corporation and that there were no prospects of earning any and that operations had been closed since the fall of 1950 and its assets disposed of. The bill of complaint in this suit was filed in June 1951. The evidence shows that after the certificates of stock in said corporation were issued to complainant, he "put them up" as collateral security for a loan from another party and that they were being so held at the time of the trial.

The court reasoned that the mortgage and note were not void on account of the clauses to which we have referred, and that they did not specify the only source from which payment of the debt should be made; and further reasoned that there would have been no occasion for a mortgage if it was understood that the debt was to be paid exclusively from the profits of the corporation. The court therefore found and decreed that the maturity of the note was a reasonable time after the corporation ceased to operate and its assets were disposed of; that the prospect of making a profit then terminated, and that a reasonable time thereafter had occurred so as to make the note due and payable, and, further, that there had been a default in the payment of the note at the time the bill was filed. The court cited in this connection the case of McCully v. McCully, 184 Okl. 264, 86 P.2d 786, to which we will refer and analyze.

The important question is whether the instrument, properly interpreted, means that the profits to be derived by complainant from the corporation constitute the only source from which the payment of the debt is agreed to be made. Otherwise stated, it is whether the payments are conditioned upon receiving profits from the corporation and whether the only promise in effect is to pay such profits as may be received and to pay the debt only to that extent.

■ Title 39, section 6, Code, relating to negotiable instruments is interesting in this connection in aid of the meaning of a conditional promise to pay. It has been generally said that this statute is an embodiment of a common law principle, and is that an unqualified promise to pay is unconditional although coupled with "an indication of a particular fund out of which reimbursement is to be made"; also that a "promise to pay out of a particular fund is not unconditional".

The distinction between those two principles is not very clear. It is said in 7 Am. Jur. 854, section 119: "The courts seem to have experienced some difficulty in determining whether particular instruments *require* payment to be made out of a particular fund. The true test in every case under the Uniform Act as well as the common law is whether the *general credit* of the maker or drawee accompanies the instrument. If it does, the instrument is negotiable (unconditional), otherwise it is not. Sacred Heart Church Building Committee v. Manson, 203 Ala. 256, 259, 82 So. 498. *The wording of the particular instrument is not determinative of the question, but the intention of the parties as disclosed by the surrounding circumstances must also be considered.* In this connection, it is to be borne in mind that the negotiability of bills and notes is favored in law, and whenever the promise can be held unconditional without doing violence to the ordinary meaning of the language used, it will be so held". (Italics supplied.)

Complainant insists that the case of People's Bank of Mobile v. Moore, 201 Ala. 411, 78 So. 789, 790, is direct authority for the proposition that the payment of the note here in question is conditioned upon the receipt of profits from the corporation

The Court in that case was dealing with the obligation of an endorser under the terms of his endorsement of a note, and held that it was limited to a fund to be derived by the maker of the note from a specified contract. The endorsers of the note obligated themselves as follows: " 'The undersigned indorsers assume the contract shown by the face of this note. Payable from Pass Aux Heron U. S. Government contract, to be completed about June 1st, 1914' ". The note was payable on demand by the maker without referring to such a contract. The question was whether the liability of the endorser extended only to receipts from the contract named in the endorsement. The Court said "the defendant's liability is limited to the fund to be derived by the maker of the notes from the government contract specified, and conditioned upon its sufficiency to pay the notes, whether in whole or in part". As an aid in reaching that conclusion, the Court referred to the negotiable instruments statute which we have mentioned. It will be observed that there was no other instrument or circumstance which shed light upon an interpretation of those terms of the endorsement instrument. Particularly, there was no security that the endorser would pay the debt. He had given no mortgage as such security. This statute is also referred to in the case of Nall v. Bland Lumber Co., 35 Ala.App. 503, 49 So. 2d 228, which is here cited for the purpose of showing the close range of interpretation which exists in an effort to determine whether the note is conditional or unconditional; and, especially, whether by such clause the obligor designated a certain fund as the only source from which payments are to be made.

The body of the note here in question is a promise to pay $5,000 "in terms as stated below". Then follows a waiver of exemptions, provision for attorney's fee, and the last clause in the note contains the provision, in substance, that the $5,000 is to be paid by the maker from his share of the profits of the corporation. The mortgage which was executed at the same time by the complainant refers to the indebtedness as being represented by a promissory note payable at the office of the First National Bank of Opp, and then provides, "Now, in order to secure the prompt payment of said note when due * * *, we * * * do hereby grant, bargain, sell and convey" and after the habendum clause it contains the usual terms of a mortgage, "but if said indebtedness or any installment thereof is not paid at maturity, then the entire debt secured hereby shall become due and payable". The instrument was drawn by a lawyer.

■ The authorities agree, as shown above, that the terms of a note alone are not the only factor to be considered in determining whether the promise is unconditional or whether it is merely the indication of a source from which the payee of the note may be reimbursed.

We agree with the trial court that the execution of a mortgage to secure the note bears an implication which is important in that respect. Does that mean it is to secure the payment by the mortgagor only of such fund as he may receive from the profits of the corporation, or does it mean security to the mortgagee that the profits of the corporation will be sufficient to pay the debt? It could mean one or the other.

■ It appears that the complainant and respondent were interested in the corporation, and it could hardly be anticipated at the time that there would be difficulty on the part of the respondent, as payee of the note, to receive under such agreement the profits of the corporation which would result from complainant's ownership of stock in it. It seems to us that the most natural result of such status is the holding in line with the trial court that the mortgage was intended to secure payment of *the debt* according to the very terms of the mortgage. It would therefore indicate that the parties understood that it was security *for the debt* to be paid and that the profits would be sufficient to do so.

■ The question here is not whether the note is negotiable but whether its payment is conditioned upon an event which has not occurred and will not occur. The

note is not negotiable unless it is payable at a time in the future which is then determinable. Title 39, Section 7, Code. But as a non-negotiable note it is not void for uncertainty, though payable at a time not then determinable. Kraus v. Torry, 146 Ala. 548, 40 So. 956; Dantzler v. Scheuer, 203 Ala. 89, 82 So. 103.

In the case of McCully v. McCully, supra, [184 Okl. 264, 86 P.2d 787], to which the trial court referred, the debtor executed a note payable ten years after date for $7,500, with interest and attorneys' fees. At the same time another instrument was executed referring to the note and providing that the maker " 'desires to pay this note out of the proceeds of his share of oil and gas royalty' ". Therefore, it was agreed between the parties that the debtor should pay to the other party " 'the one-half ½ of all such proceeds for oil and gas royalty, that he may hereafter receive, and such payments shall continue until the entire debt is liquidated' ". The court held on appeal that the note and instrument executed at the same time constituted one contract and, construing them together, they meant that the debtor merely pledged one-half of his royalties to the payment of the debt. It differentiated the situation from another Oklahoma case of West v. Anderson, 171 Okl. 165, 42 P.2d 543, in that, in the latter case the creditors agreed to take their pay from the sale of gas therein referred to, but in the McCully case, supra, "nowhere in the agreement does the plaintiff agree to look alone to such proceeds of said royalty." And so it is here.

The case of Dearing v. Moffitt, 6 Ala. 776, is subject to the same comment as is the case of Peoples Bank of Mobile v. Moore, supra. There as no security nor other circumstances affecting the meaning of the promise.

We conclude therefore that the first assignment of error is well taken only on the theory first above discussed, but we cannot concur with appellant's view that the promise to pay was void for uncertainty or payable only on a condition which has not occurred.

### Assignments Nos. 2, 4, 5 and 6

Those assignments relate to a question which arose by virtue of an amendment to the bill filed April 24, 1953, and the cross bill filed March 2, 1955.

Appellant argues that there is no evidence as to the value of the land as of November 16, 1948, although the court is alleged to have found it to be worth more than $2,000. We do not find that in the decree. But the register was required to make a finding of such value which would be reflected in the final decree.

The burden is on one seeking to set aside a mortgage of the homestead because it was not executed as required by section 626, Title 7, Code, to show that the homestead was such as described in section 625, Title 7. Metropolitan Life Ins. Co. v. Estes, 228 Ala. 582, 155 So. 79. It is only a homestead within the limits there fixed which is controlled by section 626, supra. Drake v. Drake, Ala., 80 S.2d 268(5).[1] And the court, as we observed above, will not grant such relief to complainant mortgagor except upon condition that he restore the consideration which he received. While the bill seeks a cancellation of the mortgage in its entirety because it is upon the homestead, complainant is relieved of complying with such condition by virtue of the cross bill which seeks to have the court set apart to complainant out of that tract of 105 acres a homestead of the value of $2,000, free from the mortgage held by respondent, and to foreclose that mortgage in respect to the balance of the tract not set apart as a homestead. That procedure proposed by the cross bill and pursued by the court is not prejudicial to complainant, but beneficial in that it relieves him of the duty to restore the $5,000 to respondent as a condition which he would otherwise be bound to perform to obtain such a favorable decree as sought by the cross bill.

The rule is well established that if a homestead not exceeding $2,000 in val-

ue and not exceeding 160 acres in area, can be practicably carved out of a home place which exceeds either of such limits, that portion only is exempt and subject to the requirements of section 626, supra. Where the conveyance is of a larger tract, including the homestead, which has not been selected or set apart, the conveyance is valid as to the excess over and above the quantity to which the owner is entitled by way of exemption. "In such case (it is said), the legal title to the whole passes to the grantee, with the reserved power in the grantor to withdraw the exempted portion from the operation of the conveyance, by some proper act of selection, by which it is separated from the other". De Graffenried v. Clark, 75 Ala. 425; McGuire v. Van Pelt, 55 Ala. 344. See Estes v. Metropolitan Life Ins. Co., 232 Ala. 656, 169 So. 316; Moses v. McClain, 82 Ala. 370, 2 So. 741; Farley v. Whitehead, 63 Ala. 295.

We repeat, complainant here (the mortgagor) contends that the evidence does not show that the home place exceeds in value $2,000. But we answer that it was all prima facie subject to the mortgage, and complainant should show either that it is all within the statutory limits and therefore exempt, or select a portion of it not exceeding $2,000 in value after deducting any valid mortgage on it existing on November 16, 1948. His bill does not seek such relief in either aspect.

It is apparent that the court by virtue of the cross bill was trying to do for complainant what he was entitled to have done, although complainant had the burden in that respect and had not sought that relief. Complainant has no cause to complain of that proceeding by the court. The court was of the opinion that to the extent that the tract of 105 acres exceeded in value $2,000, the mortgage was nevertheless not valid to pass the title, not having been witnessed nor acknowledged, but operated as an agreement to mortgage and thereby created an equitable lien.

It is of course a correct principle that a mortgage signed but not wit-nessed or acknowledged as required by law has that effect, (except as to an exempt homestead). Wilkins v. Reliance Equipment Co., 259 Ala. 348(10), 67 So.2d 16; Niehuss v. Ford, 251 Ala. 529, 38 So.2d 484. Section 22, Title 47, Code, requires at least one witness; and section 24, Title 47, provides that an acknowledgment complies with that requirement. When the certificate is not operative as such, the signature of the purported officer may be a good attestation, sufficient to comply with section 22, supra. Copeland v. Dabbs, 212 Ala. 489, 129 So. 88; Nashville C. & St. L. R. Co. v. Hammond, 104 Ala. 191, 15 So. 935.

But whether or not it is operative to pass the legal title, considering the absence of authority of the officer making the certificate of acknowledgment, a court of equity may enforce it to the extent that it embraces property not exempt. That is evidently what the trial court proposed to do.

We think there was no error in the ruling of the court with respect to the validity and maturity of the mortgage in question and in refusing to cancel the same on the prayer of complainant, but that there was error in rendering a personal judgment against appellant for the sum of $5,000. However, such error is not sufficient to justify a reversal of the decree, but on that account the decree should be modified so as to eliminate the same from it. Further proceedings in respect to any personal liability on the part of appellant must be pursued in accordance with Equity Rule 119½, supra.

As corrected, the decree should be affirmed.

The foregoing opinion was prepared by FOSTER, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, Section 32, Code, and was adopted by the Court as its opinion.

Corrected and affirmed.

LAWSON, SIMPSON, STAKELY, GOODWYN, and MERRILL, JJ., concur.