On Application for Rehearing
The opinion of June 4, 1993, is withdrawn and the following is substituted therefor.
Peppertree Apartments, Ltd., a limited partnership, ("Limited Partnership") appeals from a summary judgment entered in favor of the plaintiff, Peppertree Apartments, a partnership ("Peppertree"), in an action for unpaid principal and interest on a promissory note. The Limited Partnership states the issue generally as "Whether a note providing that its payment shall be made only out of a particular fund establishes general liability against the maker." It asserts that the note does not carry an unconditional promise of payment, that the plaintiff did not present substantial evidence that the Limited Partnership caused the unavailability of the funds from which payment was to be made, and that, if there was sufficient evidence as to liability, the court erred in the amount of the judgment. Pursuant to the first two assertions, the Limited Partnership argues that it is not in default on the note.
The defendant Peppertree Apartments, Ltd., is an Alabama limited partnership, whose general partners, Peppertree Apartments, Inc., and George L. Bailes, Jr., were also named as defendants.[1] When Peppertree filed its complaint, Bailes was a partner in Peppertree and was the general partner in control of the Limited Partnership.
In August 1982, Peppertree agreed to sell to the Limited Partnership a 50-unit apartment complex in Bessemer, Alabama, called Peppertree Apartments.[2] As part of the purchase price of $2,048,559, the Limited Partnership executed and delivered a $466,191 promissory note. The note provides that the Limited Partnership was to make annual or semiannual payments of principal and interest *Page 875 
to Peppertree, according to a special term of the note:
 "The principal sum of this Promissory Note shall be paid by the Maker as soon as possible in annual or semi-annual installments, with Maker to utilize in paying same (i) all capital contributions received by it from its Limited Partners pursuant to the Installment Notes executed by such Limited Partners and (ii) all 'surplus cash' (as that term is defined in Paragraph 16(f) of the Regulatory Agreement, dated October 3, 1979, between the Seller and the U.S. Department of Housing and Urban Development) remaining after the payment of the Maker's expenses of operation, until the entire principal sum of the Promissory Note shall have been paid in full."
Interest on the unpaid balance of principal was to be paid at the same time as annual or semi-annual installment payments of principal.
In October 1979, Peppertree and the United States Department of Housing and Urban Development ("HUD") entered into the "Regulatory Agreement," referred to in the promissory note, to secure construction loans insured by HUD for the construction of multi-family housing. In exchange for the loan insurance, Peppertree agreed to operate the apartment complex according to applicable federal statutes and the terms of the Regulatory Agreement. The Agreement prohibits, without prior HUD approval, the encumbrance or transfer of "any personal property of the project, including rents, or [the disbursement of] any funds except from surplus cash, except for reasonable operating expenses and necessary repairs." The Regulatory Agreement defines "surplus cash" as any cash remaining at the end of a semiannual or annual fiscal period after payment of sums due on mortgages or notes insured by HUD, payments to special reserve funds, and maintenance of sufficient accounts to refund security deposits.
The note stipulates, as one of the grounds for default, "[t]he failure of the Maker to pay any installment of principal or interest on this Promissory Note when due." In addition, the note includes an acceleration clause providing that "[i]f Maker defaults under the terms of this Promissory Note, then the entire unpaid indebtedness shall immediately become due and payable without notice at the option of the holder hereof." When the Limited Partnership purchased Peppertree Apartments, it became subject to the terms of the Regulatory Agreement.
Peppertree has never received from the Limited Partnership any payments of either interest or principal from surplus cash, although it does appear that some payments were made from capital contributions by limited partners. For all years before 1987, regular annual audits showed that the Limited Partnership produced no surplus cash. However, according to a letter drafted by Ralph D. Ruggs, director of the Housing Management Division of HUD's Birmingham office, the Limited Partnership had "cumulative surplus available at the end of 1987, 1988, 1989, and 1990" in the following amounts:
 1987 $ 9,553 1988 $25,752 1989 $40,617 1990 $75,543
Mr. Ruggs's letter, dated November 14, 1991, goes on to say, "HUD, however, does not consider this money to be available for distribution at this time." Ruggs stated that HUD would not authorize release of the surplus cash until final resolution of a lawsuit filed by the United States against Bailes and four partnerships in which Bailes was managing partner. In an earlier letter dated March 22, 1990, to John B. Bagwell, executive vice president of Royal Homes, Inc., then manager of Peppertree Apartments,[3] another HUD official had stated the need for "express approval" from HUD for any distribution of surplus cash.[4] *Page 876 
The action filed by the United States was based on findings originally made by an administrative law judge in a HUD debarment proceeding initiated around May 1987. After finding that Bailes had improperly distributed a net amount of $90,311 in project funds to money market accounts in his own name between September 1983 and December 1985, an administrative law judge entered an order debarring Bailes from participation in all HUD programs for a five-year period. On these findings, the United States brought an action in May 1989 against Bailes and the four partnerships to recover under a federal statute double the amount of the funds retained. Applying the doctrine of collateral estoppel to the findings of the administrative law judge, the district court entered a summary judgment against Bailes for $180,622.[5]
On April 4, 1989, Peppertree filed this action, alleging that the Limited Partnership had defaulted on the promissory note. Peppertree moved for a partial summary judgment, alleging that in excess of $40,000 in surplus cash was available for repayment under the note. In support of this motion, Peppertree submitted a copy of the promissory note, a statement from Royal Homes, Inc., of monies on deposit in surplus cash accounts, requests for admissions deemed admitted for failure to answer, and the Regulatory Agreement. The trial court denied this motion because of a letter from Ralph Ruggs to John Bagwell, dated June 12, 1991, stating that no surplus cash was available for distribution until certain expenses were paid. Peppertree subsequently filed a motion for summary judgment, requesting a money judgment for the accelerated amount due on the note. Peppertree supported its motion with the affidavit of Robert S. Vance (a general partner in Peppertree), a 1986 HUD audit report, the "Final Determination" of the HUD debarment proceeding, and a letter from Peppertree informing HUD of its motion for summary judgment. After initially overruling Peppertree's motion, the trial court changed its ruling, to grant the motion, stating in part:
 "As this Court understands the argument made by counsel for Peppertree Apartments General Partnership in connection with its motion for reconsideration, the amount shown as surplus cash for the years 1987 through 1990 would have been available for distribution and payment to Peppertree Apartments General Partnership except for the fact that George L. Bailes, Jr., had earlier paid the money to himself without authority to do so.
 "It is argued that Peppertree Apartments, Ltd., a limited partnership, and its general partner, George L. Bailes, Jr., are liable because they are in default in the payment due under the promissory note and therefore are obligated to pay the entire principal amount of the note plus interest.
 "Having considered the argument made by counsel for Peppertree Apartments General Partnership, this Court is of the opinion that the motion for reconsideration is due to be granted.
 "Accordingly, the motion for reconsideration is granted. The motion for summary judgment filed by Peppertree Apartments General Partnership is hereby granted. Judgment is hereby rendered in favor of Peppertree Apartments General Partnership against Peppertree Apartments, Ltd., a limited partnership, and George L. Bailes, Jr., in the amount of $553,580.44 representing principal and interest due under the promissory note.
 "This Court notes, however, that this judgment is not collectable against surplus cash as defined by paragraph 16(f) of the *Page 877 
Regulatory Agreement with HUD until such time as HUD finds that such funds are available for distribution."
The first issue is whether a genuine issue of material fact exists as to whether the Limited Partnership defaulted on the note. It argues that it presented substantial evidence that surplus cash was not available for distribution during the years 1987 through 1990 and that, thus, it did not default by failing to make payments from surplus cash. Citing People'sBank of Mobile v. Moore, 201 Ala. 411, 78 So. 789 (1918), and §7-3-105(2)(b), Ala. Code 1975, it asserts that the note establishes only conditional liability, depending upon the availability of surplus cash, and that Peppertree has failed to present substantial evidence of the availability of surplus cash for payment on the note. The Limited Partnership argues that Peppertree must show not only the existence of surplus cash but also its availability for distribution during the years in question. It contends that the note obligates it to make payments of principal and interest "as soon as possible" from capital contributions and surplus cash; therefore, the Limited Partnership maintains, no liability for payment arises unless payment from the stipulated sources is "possible." Accordingly, it says, if payment has not been "possible," it is not in default.
In support of its argument, the Limited Partnership points to the March 22, 1990, letter to John Bagwell and the November 14, 1991, letter from Ruggs. It contends that, viewing the evidence and making all reasonable inferences in favor of the nonmoving party, one must conclude that no surplus cash has ever been available because HUD has prohibited its distribution. In addition, it argues that, contrary to the conclusion expressed in the trial court's order and judgment, Peppertree did not present substantial evidence to show that Bailes's conduct specifically caused the unavailability of the surplus cash shown to exist in the years 1987 through 1990.
Peppertree argues that, notwithstanding the current unavailability of surplus cash, the note is in default because earlier, in 1987 and 1988, surplus cash was available but was not paid. Peppertree emphasizes that the Ruggs letter, dated November 1991, states that HUD "does not consider those funds to be available for distribution at this time." According to Peppertree, the evidence does not show that surplus cash generated in 1987 and 1988 was unavailable for distribution and, it says, in the absence of such evidence the trial court properly held that the Limited Partnership had an obligation to pay. Peppertree argues that the Limited Partnership's failure to make such payments constituted default before the filing of this action in April 1989 and that the acceleration clause in the note thereupon made the entire amount due without regard to continuing availability of surplus cash. In reply to the Limited Partnership's argument that no evidence shows that Bailes's misconduct caused the later unavailability of surplus cash, Peppertree points to the findings of misconduct from the HUD debarment proceeding, which became the basis of the action by the United States against Bailes.
A summary judgment under Rule 56, Ala.R.Civ.P., is proper when the trial court determines that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. See Lee v. Clark Assocs. Real Estate,Inc., 512 So.2d 42, 44 (Ala. 1987); George v. Federal Land Bankof Jackson, 501 So.2d 432, 434 (Ala. 1986). When the movant makes a prima facie showing that no genuine issue of material fact exists, the nonmovant then has the burden to show substantial evidence creating such an issue. Bean v. Craig,557 So.2d 1249, 1252 (Ala. 1990). Like the trial court, this Court considers the evidence in the light most favorable to the nonmovant and resolves all reasonable doubts against the movant. Specialty Container Mfg., Inc. v. Rusken Packaging,Inc., 572 So.2d 403, 404 (Ala. 1990). "Speculation and conclusory allegations are insufficient to create a genuine issue of material fact." Brooks v. Colonial Chevrolet-Buick,Inc., 579 So.2d 1328, 1330 (Ala. 1991).
The intention of the parties controls when a court construes the terms of a promissory note, and that intention is to be derived from the provisions of the contract, if the language is plain and unambiguous. *Page 878 Southern Housing Partnerships, Inc. v. Stowers Management Co.,494 So.2d 44 (Ala. 1986); Smith v. Citicorp Person-to-PersonFin. Centers, Inc., 477 So.2d 308 (Ala. 1985); Logan v. CitizensNat'l Bank of Opp, 460 So.2d 1239 (Ala. 1984).
A promissory note payable out of a particular fund is not unconditional and does not carry the maker's general personal credit; therefore, payment on such a note is contingent on the sufficiency of the fund from which the payment is to be made. Section 7-3-105(2)(b), Ala. Code 1975; Burden v. Feore,460 So.2d 861 (Ala. 1984); Rhodes v. Schofield, 263 Ala. 256,82 So.2d 236 (1955); People's Bank of Mobile v. Moore, 201 Ala. 411,78 So. 789 (1918). See generally Annotation, WhatConstitutes Unconditional Promise to Pay Under UniformCommercial Code § 3-104(1)(b), 88 A.L.R.3d 1100 (1978).
In People's Bank of Mobile v. Moore, the plaintiff sued on notes indorsed by the defendant. The indorsement on the otherwise unconditional notes stated:
 "The undersigned indorsers assume the contract shown by the face of this note.
 "Payable from Pass Aux Heron U.S. Government contract, to be completed about June 1st, 1914."
Moore, 201 Ala. at 412, 78 So. at 790. Finding that the indorsements were qualified, the Court held that the indorsers' liability was conditioned on the sufficiency of the funds from the government contract to pay the notes either in whole or in part and that the plaintiff's recovery from the indorsers was therefore limited to the amount of those funds.
In Rhodes v. Schofield, supra, the defendants executed a note for $5,000, secured by a mortgage, to be paid from their share of the profits earned by a corporation. The defendants borrowed the money for the purpose of contributing to the formation of the corporation and acquiring a part of its capital stock. The issue was "whether the payments are conditioned upon receiving profits from the corporation and whether the only promise in effect is to pay such profits as may be received and to pay the debt only to that extent." Rhodes, 263 Ala. at 261,82 So.2d at 240. Construing the mortgage to secure the amount of the debt and not merely to guarantee that funds the plaintiff might receive as profits from the corporation would go to payment of that debt, and viewing the note as a whole as pledging the general credit of the defendants, the Court held that the note was not intended to be repaid solely from the corporation's profits.
The provision for payment of principal and interest from capital contributions or surplus cash indicates that the Limited Partnership's initial obligation to pay was conditional upon the availability of such funds. Rhodes v. Schofield,supra; People's Bank of Mobile v. Moore, supra. However, Peppertree has shown by substantial evidence that the condition had been satisfied before it filed this action in April 1989. For example, the November 14, 1991, Ruggs letter constitutes substantial evidence that there was surplus cash at the end of each of the years 1987 and 1988. The note required the Limited Partnership to "utilize . . . all 'surplus cash' " in paying the note "as soon as possible." It follows as a matter of law that the Limited Partnership had an obligation during those years to make annual or semi-annual payments of principal and interest. Its failure to do so constituted a default, and the trial court thus correctly held that the note was in default when Peppertree brought this action.
Notwithstanding the existence of surplus cash, the defendants insist that none was available for distribution because HUD has refused to authorize its release. We construe this argument as asserting that the defendants presented substantial evidence that the Limited Partnership's absolute obligation was excused because HUD's action made it impossible to perform.
As to this ground, however, the defendants did not present substantial evidence in opposition to the summary judgment motion, because they did not present evidence that surplus cash was unavailable for distribution in 1987 and 1988 because of HUD's actions. The HUD letter to John Bagwell, dated March 22, 1990, shows only that as of early 1990, surplus cash was available for distribution only upon HUD's "express approval." Similarly, the Ruggs letter states that existing *Page 879 
cumulative surplus cash was not available for distribution in November 1991, but it does not indicate that such funds had been unavailable in earlier years.
The remark in the Ruggs letter about the unavailability of the cumulative surplus cash until final resolution of the action by the United States against Bailes and the circumstances of the debarment proceeding suggest that HUD might have prohibited release of existing surplus cash as early as 1987. Speculation and conclusory allegations, however, do not meet the defendants' burden to present substantial evidence that their duty to perform was excused or discharged because existing surplus cash was unavailable for distribution. Peppertree filed its action one month before the United States brought its action against Bailes and the four partnerships under his management. Although the Ruggs letter explains that HUD restricted distributions of surplus cash pending the outcome of the action by the United States, the letter does not establish the existence of such restrictions before the commencement of that action. Thus, none of the evidence of the restrictions imposed by HUD contradicts the evidence that the note was in default when this action was filed and had been in default for some time before that. Moreover, the only reasonable inference from the evidence is that it was Bailes's earlier misconduct that made it necessary for HUD to impose the restrictions.
We note that even if the defendants had presented substantial evidence of earlier impossibility of performance, the Limited Partnership's obligation under the note would not, as a matter of law, be excused or discharged.
 "The general rule is that, where the performance of a contract becomes impossible subsequent to the making of same, the promisor is not thereby discharged. But this rule has its exceptions, and these exceptions are where the performance becomes impossible by law, or by some action or authority of the government."
Greil Brothers Co. v. Mabson, 179 Ala. 444, 450, 60 So. 876,878 (1912). In Hawkins v. First Federal Sav. Loan Ass'n,291 Ala. 257, 280 So.2d 93 (1973), this Court held that illegality created by a change in the law subsequent to entering into a contract excuses performance, while illegality resulting from an unfavorable exercise of discretion by governmental officials acting under existing law does not. Thus, even if the defendants had shown that after 1987 HUD had prohibited any distributions of existing surplus cash, such an exercise of discretion, if lawful, would not excuse the Limited Partnership from performance under the note. This is especially true because the actions by HUD were caused by the defendants' own wrongdoing.
For the foregoing reasons, the trial court correctly held that the defendants had defaulted on the note before Peppertree brought this action, notwithstanding the later HUD restrictions on distribution of surplus cash. The defendants also argue, however, that the note did not establish general liability against the Limited Partnership, as the maker, or Peppertree Apartments, Inc., and Bailes, as its general partners, for the accelerated amount of $553,580 due under the note.
Citing Moore, supra, the defendants assert that default on the note does not result in general liability against the maker, because, under its terms, the note is payable solely from stipulated sources. They also argue that, for the same reason, the amount of the judgment should be limited to the $75,543 cumulative amount of existing surplus cash. Peppertree responds by arguing that the defendants' liability is not so limited and that, for example, it can execute its judgment against the Peppertree apartment complex, as an asset of the Limited Partnership.
The defendants' argument must fail because of the acceleration clause in the note: "If Maker defaults under the terms of this Promissory Note, then the entire unpaid indebtedness shall immediately become due and payable without notice at the option of the holder hereof." This provision would be meaningless if, after default, Peppertree could continue to look for payment only from the funds stipulated as sources of payment before default. The Limited Partnership must pay the debt "as soon as possible" from surplus cash to meet its obligations under the *Page 880 
note. If a judgment for the accelerated amount due because of a default required only that the Limited Partnership pay the amount due as soon as surplus cash became available to make such payments, the judgment would put Peppertree in no better position than its original position under the note, and the acceleration clause would be meaningless.[6]
Moore is not authority to the contrary, because it concerned only the indorsers' liability under their limited indorsement. In such a situation, the indorsers' liability would not be made general simply because of a default by the maker of the note.
The intention of the parties to a note or other contract is to be determined from the contract itself, where the contract is plain and unambiguous. Southern Housing Partnerships, Inc.v. Stowers Management Co., 494 So.2d 44 (Ala. 1986); Smith v.Citicorp Person-to-Person Fin. Centers, Inc., 477 So.2d 308
(Ala. 1985). "Instruments are to be construed as a whole so as to harmonize their parts whenever possible." Dudley v. Fridge,443 So.2d 1207, 1211 (Ala. 1983). The various provisions of the note, read together, unambiguously provide that liability is initially conditional and that payment is to be made out of designated funds but that, if payment is not made when the condition is satisfied, such a default renders the maker immediately liable for the balance of the note, plus interest, without regard to the otherwise-designated funds.
Because the record shows no genuine issue of material fact, the trial court properly entered the summary judgment in favor of the plaintiff.
APPLICATION GRANTED; OPINION SUBSTITUTED; AFFIRMED.
HORNSBY, C.J., and SHORES, STEAGALL and COOK, JJ., concur.
[1] The notice of appeal is ambiguous as to which defendants appeal. The judgment before us was entered against both the Limited Partnership and Bailes, but only the Limited Partnership was named in the notice of appeal, which reads:
 "Notice is hereby given that Peppertree Apartments, Ltd., a limited partnership, et al., appeals to the above-named court from the final [sic] judgment."
Apparently, the "et al." was simply copied from the abbreviated case style used throughout the proceedings. Although this designation could be deemed to include Bailes as an appellant, the singular verb "appeals" indicates that he did not appeal. Certainly the defendant Peppertree Apartments, Inc., cannot be an appellant, because there is no judgment against it, although its absence from the judgment may have been an oversight by the trial court. Because the Limited Partnership is the only party named on the notice of appeal, we shall treat it as the sole appellant. These considerations are not ultimately material, because a judgment against the Limited Partnership is a liability of its general partners. "A partnership debt is, admittedly, the joint and several obligation of the partners."Brown v. Bateh, 331 So.2d 671, 677 (Ala. 1976). See Ala. Code 1975, §§ 6-7-70, 10-9A-62.
[2] At that time, Bailes was the managing partner of Peppertree. When Peppertree filed this action, another one of its partners was managing partner.
[3] When Peppertree brought this action, Bailes was not managing Peppertree Apartments because he had been debarred from the HUD program in 1987.
[4] In response to Peppertree's motion for summary judgment, the defendants submitted an affidavit from John Bagwell, in which he stated:
 "There are surplus funds available for disbursement. The funds have not be [sic] disbursed because of instructions from HUD. HUD has prohibited Royal Homes indefinitely from distributing any surplus funds with regard to Peppertree Apartments. All funds are being held until further instructions from HUD. Any disbursement without authority from HUD will jeopardize my contract with HUD."
Mr. Bagwell's affidavit is dated October 23, 1991.
[5] In September 1991, the Eleventh Circuit Court of Appeals affirmed the judgment against Bailes. United States v.Peppertree Apartments, 942 F.2d 1555 (11th Cir. 1991). The United States Supreme Court granted Bailes's petition for writ of certiorari and vacated that part of the judgment representing the "doubling" of damages under 12 U.S.C. § 1715z-4a(c) (Supp. 1990). Bailes v. United States, ___ U.S. ___,112 S.Ct. 1755, 118 L.Ed.2d 419 (1992).
[6] The portion of the judgment stating that it is "not collectible against surplus cash" until HUD releases those funds effectuates the federal agency's restrictions on those funds and requires Peppertree to look to other assets of the defendants for satisfaction of the judgment, unless and until HUD releases the hold on surplus cash.