90 164
98 368

90 164
101 655

90 164
106 610

90 164
128 179
128 183

90 164
139 327

# Donnor v. Quartermas.

### Bill in Equity for Partition of Lands.

1. *Administrator as party.*—Under a bill for the partition of land among several tenants in common, and an account for rents and profits, if one of the defendants dies pending the suit, his administrator must be brought in as a party, before an account can be ordered against his estate; but the complainants may abandon the claim for an account, and proceed to a final decree of partition, without making the administrator a party, the interest of the deceased having vested in the surviving parties.

2. *Purchase of tax title by tenant in common, or by person bound to pay taxes.*—When one tenant in common is in possession of the property under a written contract with the others, which binds him to pay the taxes in consideration of his occupancy without payment of rent, and even without such express contract, he can not become the purchaser at a sale for unpaid taxes, and thereby acquire a title against the other tenants; nor can he acquire any title, as against them, by suffering the property to be sold for unpaid taxes, and afterwards redeeming from the State. In each case, his purchase enures to the equal benefit of all.

3. *Repudiation of contract on account of breach.*—One tenant in common being allowed, with her husband, to occupy the property without payment of rent, on their promise to pay the taxes and to keep the property insured, and afterwards, in violation of this agreement, suffering the property to be sold for unpaid taxes, and then redeeming from the State; the other parties are justified in repudiating the contract, and filing a bill for partition, before an adverse title might be perfected under the statute of limitations.

4. *Partition in equity.*—Courts of equity had original jurisdiction to partition lands among joint owners, or tenants in common, though the jurisdiction to decree a sale of the lands of adults, for the purpose of making an equitable division, is purely statutory (Code, § 3262); and in the exercise of its jurisdiction to decree a partition, it proceeds on its own established principles, and is not bound to have the ownership of the different parcels determined by lot, as the Probate Court is.

5. *Same.*—When the land to be partitioned belongs to three tenants in common, in equal proportions, two of them may unite as complainants in a bill against the third; and they may have their separate portions allotted to them jointly as one parcel.

6. *Same.*—Partition is a matter of right between tenants in common, and it may be demanded by one of them without regard to any inconvenience, embarrassment or difficulties attending it, or any mischief which may be thereby caused to the property.

7. *Same; improvements.*—A court of equity, in making partition of land between part-owners, or tenants in common, will order it to be

so made, if practicable, as to give the benefit of any improvements on the land to him who erected or made them; and this is done by assigning to him that portion of the property on which they were erected.

APPEAL from the City Court of Selma, in equity.

Heard before the Hon. JONA. HARALSON.

The original bill in this case was filed on the 18th August, 1884, by Mrs. Sarah H. Quartermas, and Mrs. Mary A. Quartermas, their husbands joining with them, against Mrs. Sarah H. Hillyard, who was their mother, Mrs. Sidney M. Donnor, who was their sister, and Frank M. Donnor, the husband of said Sidney; and prayed a sale of a town lot in the city of Selma, which belonged to the several parties as tenants in common, on the ground that it could not be equitably divided without a salë, and also for an account of rents and profits. After demurrer sustained, on the ground that a court of equity then had no jurisdiction to decree a sale of the lands of adults for equitable division, or partition, without their consent, the complainants were allowed to amend their bill, by striking out the prayer for a sale, and the allegation that a sale was necessary to effect an equitable division of the property, praying a partition instead, and alleging that a partition was practicable.

The property in controversy, described as "Lot No. 47 in the city of Selma," was conveyed by R. N. Philpot, by deed dated February 12th, 1844, on the recited consideration of $400 paid, to Mrs. Sarah H. Hillyard, then Sarah H. O'Gilvie, and her sister, Frances M. O'Gilvie; and they at once took possession of it. Sarah H. soon after married Joseph Hillyard, and four children were born to them—namely, the two complainants, Mrs. Donnor, and Robert J. Hillyard. In 1857, Frances M. O'Gilvie married Lewis M. Smith; and on the 1st February, 1860, on the recited consideration of natural love and affection, she conveyed her undivided interest in the lot to her sister's four children, above named. By deed dated June 13th, 1881, Robert J. Hillyard sold and conveyed his undivided interest in the lot, one-eighth, to his mother, Mrs. Sarah H. Hillyard, who thus became the owner of an undivided five-eighths interest, while her said three daughters each owned an undivided one-eighth. Robert J. Hillyard died in 1883, intestate, and never having married. A decree pro confesso was taken against Mrs. Hillyard, and her death in February, 1886, was afterwards suggested, whereby her three daughters became each entitled to an undivided one-third interest in the property; but the cause was never revived against her administrator, nor does it appear that any was ever appointed.

On the 10th December, 1880, a written agreement under

seal was concluded and signed by and between Mrs. Hillyard and her four children, the husbands of the three daughters joining with them, which was made an exhibit to the bill, and which, after reciting their respective interests in the property, proceeds thus: "*And whereas* we have this day bargained, sold and conveyed to A. J. Golding" a certain portion of the property particularly described; "*and whereas* we, said Sarah H. Hillyard, Robert J. Hillyard, and Sidney M. Donnor, and her husband and children, now occupy and enjoy the use and occupation, and rents and profits of said premises, and have heretofore so done, and do purpose and intend to use, occupy and enjoy as a homestead, for and under the consideration hereinafter written, the dwelling and remaining part of said lot, together with the rights and privileges thereof, until a sale, or other disposition thereof, as hereinafter provided, shall be made; *and whereas* there have heretofore existed on the part of several of us certain conflicting and other claims, of and concerning the said premises, including the occupation by some of us, the payment of taxes and insurance by some of us, as well as other things and charges: Now, it is hereby understood and agreed, that all of said matters have been and are now hereby settled, compromised, and held for nought, in and for the conditions and stipulations of these presents; and for and because of the conditions and stipulations hereof, the respective shares of each of us, of, in and to the remaining part of said lot, with the appurtenances thereunto belonging, are now and hereby declared to be as follows," stating them as above; "*and whereas* it is the desire, as above written, of the said Sarah H. Hillyard, Robert J. Hillyard, and Sidney M. Donnor, with her said husband and children, to continue to live on and occupy the said last named premises as a homestead, and the same is consented to by said Mary A. and Sarah H. Quartermas and their respective husbands, on the condition that they, said Sarah H. and Robert J. Hillyard and Sidney M. Donnor and her said husband, shall and do pay, or cause to be paid, all and singular whatever of taxes there now are, or which shall hereafter, during said occupancy and tenancy, become due, or be assessed against said property, and shall also, at the fair valuation thereof, keep the improvements on said premises, during said occupancy, well insured against loss or destruction by fire, whereby, should the said improvements, or any of them, be injured or destroyed by fire, the said Mary A. and Sarah H. Quartermas will be reimbursed and paid therefor; and the said Sarah H. and Robert J. Hillyard, and Sidney M. Donnor and her husband, assenting and agreeing thereto: And we respectively further agree, that said Sarah H. and Robert J. Hillyard,

[Donnor v. Quartermas.]

and the said Sidney M. Donnor and her husband, shall be relieved and discharged from the payment of rent for said premises, because of the payment of said taxes and insurance, so long as they shall occupy the same, provided that we, said Mary A. and Sarah H. Quartermas, shall not sell and convey our respective shares. It is therefore expressly agreed and understood, that should we, said Mary A. and Sarah H. Quartermas, or either of us, sell and dispose of our or either of our said shares in said property, the said right to so occupy said property by said other tenants in common shall cease and be determined. In witness whereof," &c.

On the 5th August, 1881, the property, or a part of it, was sold for unpaid taxes, and bid in by the State; and another portion was sold and bid in on the 14th August, 1882. On the 26th March, 1883, Mrs. Donnor redeemed, or bought the interest of the State, and received two conveyances from the State Auditor, each containing a recital that she did "not claim to be the owner of said land." In one of said deeds the property sold and conveyed is described as "two houses and lots on the south side of Alabama street in Selma;" and in the other, as "one house and lot on the south-east corner of Lawrence and Alabama streets in Selma." The bill alleged these sales for taxes, and purchases by Mrs. Donnor in her own name, annexing copies of the conveyances to her as exhibits; and complainants insisted that her purchases enured in equity to the equal benefit of all the tenants in common. The amended bill prayed, also, that the amount found due to the complainants from Mrs. Donnor, on the statement of the account for rents, might be charged as a lien on the portion of the property allotted to her.

Mrs. Donnor filed a separate answer, in which she denied the execution of said agreement of December 10th, 1880, and its binding force as against her or her statutory property; denied her liability to pay or account for rents, alleging that she had paid rents to her mother, Mrs. Hillyard; and asserted title to the property under her purchase from the State. F. M. Donnor, in his answer, alleged that he and his wife signed said written instrument of December 10th, 1880, in ignorance of its contents, and on representations of complainants and their husbands that it was necessary to perfect the sale of a part of the property to said Golding.

On final hearing, on pleadings and proof, the court held that the complainants were entitled to have a partition of the property, and appointed commissioners to make the partition; instructing them that "they will not fail to make partition of said premises because it may appear that partition will be

inconvenient, or injurious to the parties in interest; that in allotting to the parties their several shares, the commissioners may look to their respective circumstances, and assign to each that part of the property which will best accommodate her, without injury to the others; that if the complainants elect to consider their shares as one, and make such election known to the commissioners in writing, the commissioners may set off their respective interests, but otherwise they will allot to each one third in value of the whole;" and all further questions, "including the matter of accounts between the parties on any account," it was declared, "are retained for further adjudication." The court further held, in the opinion accompanying the decree, that although the contract of December 10th, 1880, might not be binding on Mrs. Donnor personally, or on her statutory property, yet its repudiation by the defendants justified the complainants in treating it as ended, and filing their bill for partition; and that Mrs. Donnor's purchase from the State gave her no title as against the complainants, but only a right to contribution from them.

The commissioners made partition of the property under the decree, allotting to Mrs. Donnor a portion particularly described, which was said to be one third of the whole in value, and the residue to the complainants jointly, describing it with particularity; and they reported their proceedings to the court. Exceptions to the report were filed by the defendants, but were overruled by the court, and the report was comfirmed. Afterwards a pertition was filed in the cause by John F. White, as administrator of the estate of Mrs. Sarah H. Hillyard, asking to be made a party to the decree, in order that he might take an appeal; but this petition was contested by the complainants, and was overruled and dismissed by the court, on the ground that no account of rents and profits had been ordered, and no liability against Mrs. Hillyard's estate was either sought or shown.

The appeal is sued out by Mrs. Donnor and her husband, and the errors assigned are: (1) the failure to revive the suit against the personal representative of Mrs. Hillyard; (2) proceeding to a hearing and decision of the cause in the absence of a necessary party defendant; (3) the decree of partition; (4) the specific instructions to the commissioners; (5) the decree confirming the report of the commissioners, and overruling the defendants' several exceptions to it,

S. W. John, and Mallory & Quarles, for appellants.

Jno. C. Reid, contra.
Vol. xc.

[Donnor v. Quartermas.]

SOMERVILLE, J.—The bill, as amended, is one for the partition of real estate among tenants in common, and for an account of rents, and use and occupation, against the defendants, who are alleged to hold adversely to the plaintiffs under a tax title.

1. One of the defendants, Mrs. Sarah H. Hillyard, who is alleged to have owned an undivided five-eighths interest in the premises, is shown to have died since the bill was filed. As one purpose of the suit was to charge her with rents, and for use and occupation, it is insisted that the suit should have been revived against her personal representative, who became a necessary party after her decease.

It is true that no account can be taken between the parties, so as to establish a debt against the estate, unless it is represented by an administrator or executor. And if an account for the rents and profits had been ordered against the estate of Mrs. Hillyard, or if the facts of the case authorized such a decree, and the complainants had insisted on such an account, by cross-assignments of errors, we would reverse the decree for the want of a necessary party defendant.—*Tindal v. Drake*, 51 Ala. 574: *Jones v. Richardson*, 85 Ala. 463. But no decree has been asked or rendered against the estate of Mrs. Hillyard, or against the defendants Donnor and wife, for rents, or for use and occupation. The complainants may have abandoned the prosecution of this phase of the case, and, if so, the personal representative of Mrs. Hillyard will not be a necessary party. The evidence moreover, as said in the chancellor's opinion, shows that Donnor and wife have been in the exclusive enjoyment of the property since the year 1880, and that they, and not the estate of Mrs. Hillyard, owe the complainants for the occupation of the property, if any one.

2. The next inquiry relates to the tax title acquired by the defendant, Mrs. Donnor, by transfer from the State, under which the defendants are alleged to have set up an adverse occupation against their co-tenants, the complainants. There are two grounds, on either of which we must regard the acquisition of this tax title as enuring to the common benefit of all the joint owners of the property on which the tax was assessed. (1.) The contract of December 10th, 1880, between the complainants and the defendants, under which the defendants were allowed to occupy the premises free of rent, imposed on each of the defendants the express duty *to pay the taxes* on the property, in addition to keeping the improvements well insured against the loss or destruction by fire. (2.) The relation of tenants in common existed between the parties. For each of these reasons, Mrs. Donnor was disquali-

fied to acquire any title founded on her own default in neglecting to pay the taxes. The transfer from the State of this outstanding tax title must, therefore, be construed to operate only as a payment of the taxes, enuring to the equal benefit of all the part owners, and not as a valid purchase of the interest of her co-owners.—*Bailey v. Campbell*, 82 Ala. 342; *Jackson v. King, Ib.* 432; 11 Amer. & Eng. Encyc. Law, 1082–1086. The purchaser so situated, according to the sounder view, can claim no benefit under such tax title, except as a basis for compelling his other co-owners to reimburse him for their *pro rata* share of the common burden on the land. Freeman on Co-tenancy & Part. (2d Ed.), § 158.

3. We need only add, that we are satisfied from the testimony, as was also the judge of the City Court, that the defendants, Donnor and wife, signed the agreement above referred to with a full knowledge of its contents. How far it may have been binding, or otherwise, on Mrs. Donnor, by reason of the fact of her coverture, we need not discuss, as the adverse assertion of title by her and the other defendants in possession, coupled with the violation of their assumed obligation to pay taxes on the property, fully justified the complainants in repudiating the continued binding force of the agreement on themselves, which they have undertaken to do by the filing of this bill. If this were not so, the complainants would be without a remedy to prevent the known adverse occupancy of the defendants, under the tax title, from maturing into a perfect title against themselves.— *Wells v. Shearer*, 78 Ala. 142; *Hughes v. Anderson*, 79 Ala. 209.

4. One of the main contentions of the appellants, as we understand it, is, that the Chancery Court can exercise its jurisdiction to partition property, among joint owners or tenants in common, only by following the mode of procedure prescribed by statute for the regulation of like proceedings by the Probate Court, where the ownership of the respective parcels is determined by lot.—Code, 1886, § 3244. The statute, it is true, declares that "the Chancery Court shall have concurrent jurisdiction with the Probate Court to divide or partition, or to sell for division or partition, any property, real, personal or mixed, held by joint owners, or tenants in common."—Code, 1886, § 3262. And while the original jurisdiction of Chancery Courts *to sell* the lands of adults for division, without consent, is purely statutory in this State, not having been exercised before the Code of 1886, the jurisdiction to *partition* such lands among co-owners is an acknowledged and independent head of equity jurisdiction, long exercised both in this country and in England. And it is well settled, that this jurisdiction,

[Donnor v. Quartermas.]

of which the statute is merely declaratory, will be exercised by a court of equity on its own established principles, and with the use of its own better adapted and more flexible modes of procedure, unembarrassed by the procrustean rules which cramp the statutory jurisdiction of courts of law.—*Marshall v. Marshall*, 86 Ala. 386; *Lyon v. Powell*, 78 Ala. 351; *Wilkinson v. Stuart*, 74 Ala. 198; Freeman on Co-tenancy & Part. (2d Ed.) § 428, and *note*, p. 560; *Rutherford v. Jones*, 60 Amer. Dec. 655; Story's Eq. Jur. §§ 646–658.

The practice of the Chancery Court in this State has always been, to administer this branch of its jurisdiction on strict equitable principles, and by equitable modes of procedure; and we hold that this court can not be confined to the statutory mode prescribed for the partition of property by the Probate Court.—Code, 1866, § 3237. This is too obvious, from both reason and authority, to admit of doubt, or to require argument.

5. There is no error in that part of the decree of the court allowing the two female complainants, who are each shown to be tenants in common in the property, to unite in the bill for partition, and to jointly elect to consider their several moieties as one moiety, and to have it set apart to them as one un-divided fractional share of the whole.—Freeman on Cot. & Part. § 459.

6. So it may be considered as settled by the weight of authority, that every co-tenant is entitled to demand a partition of the common property, although such partition may be inconvenient, or injurious—it has sometimes been said, or even ruinous—to one or more of the parties in interest.—Freeman on Co-ten. & Part. 433, 438; 3 Pom. Eq. Jur. § 1389. Or, as said by Mr. Adams in his work on Equity, p. 230, it "may be demanded as matter of right, notwithstanding the difficulties by which a division may be embarrassed, or the mischief it may entail on the property."

7. And the rule in equity, in making partition among tenants in common, is for the court, if practicable, to so order the partition as to give the benefit of any improvements made on the premises to him who may have erected or made them; and this is done by assigning to such part owner the portion of the estate on which such improvements are situated. *Wilkinson v. Stuart*, 74 Ala. 198; *Sanders v. Robertson*, 57 Ala. 465; 3 Pom. Eq. Jur. § 1389; Freeman on Co-ten. & Part. § 509; 11 Amer. & Eng. Encyc. Law, 1104 *et seq.*

We discover no error in the record, and the decree is affirmed.