[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 673 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 674 
These cases are a continuation of the series of lawsuits that Justice Merrill termed "long and vexatious" litigation in 1972. See Bateh v. Brown, 289 Ala. 695, 271 So.2d 830 (1972); Batehv. Brown, 289 Ala. 699, 271 So.2d 833 (1972); and Cole v.Brown, 289 Ala. 712, 271 So.2d 846 (1972).
The instant litigation, like the aforementioned cases, is directed at the dissolution and liquidation of the various business entities owned or controlled by Brown and Bateh, the B-D Development Company in S.C. 1058, and the BBC Investment Company, Inc. in S.C. 1058-A. S.C. 1058-B involves the First National Bank's foreclosure on certain realty mortgaged by Brown and Bateh.
Justice Merrill's three opinions cited above reversed and remanded a final judgment by Judge William C. Barber in the Circuit Court of Jefferson County, sitting in equity. Judge Barber's final decree, dated August 31, 1971, had dissolved the business entities and divided the property "in-kind."
Justice Merrill wrote that the cases had been improperly consolidated and that there was insufficient evidence in the record to support an "in-kind" distribution of the assets and liabilities of the partnership and the corporation. Consequently, we reversed Judge Barber's decree, ordered a new trial set, and suggested that the business entities be dissolved according to statute, unless the parties could settle the case. We indicated that an "in-kind" distribution would be acceptable if both parties agreed, the creditors were fully protected, and the court approved the division.
On February 7, 1973, Brown filed a motion for multiple relief, seeking to determine which issues would be litigated in light of the remand, to ascertain how to restore the status quo, and to set an early oral hearing. Bateh responded with a motion to strike, and a motion for compliance with the Supreme Court's opinion. Crossbills of complaint, answers and demurrers were filed by the appropriate parties. To sort things out and to determine the course of further proceedings, the trial court scheduled a hearing. By June 12, 1973, claims against the partnership had been filed by Dun and Bradstreet, Inc. and by H.L. Raburn Co. The court then ordered the consolidation of the various cases. On January 31, 1974, an interim decree was issued, ordering money owed to the various entities controlled by Bateh and Brown paid to the acting register of the court. A final decree was issued on June 14, 1974, again dissolving the partnership and the corporation and providing for an "in-kind" distribution of the assets. The decree also disposed of the Bank's foreclosure action. Brown petitioned for a rehearing which was denied. Bateh filed reports alleging his compliance with the decree. He then by letter and affidavit requested the institution of collection processes against Brown, for money owed pursuant to the decree. Brown filed a supersedeas bond and took the instant appeal. The bond required was raised from $25,000 to $250,000 in response to Bateh's motion to strike the bond or increase its size. The larger bond Brown was unable to post. He did, however, take the instant appeal. The case was orally argued and submitted on October 22, 1975.
Justice Merrill should have added "complex" to his list of adjectives describing this litigation. Even though the cases *Page 675 
were consolidated on appeal, clarity demands that the contentions of the parties be dealt with on a step-by-step basis. The facts and legal maneuverings are generally applicable to all three cases; any differences will be notedinfra.
 S.C. 1058 — The B-D Partnership
This court feels that the proper starting point is the partnership dissolution. We are well aware that Brown has petitioned for writs of mandamus and that Bateh, and other appellees, have filed motions to dismiss. Why we have postponed discussion of these will become apparent. Let us first examine the positions of the parties and their contentions as to the dissolution of the partnership and the distribution of the assets and liabilities.
This case began on March 7, 1968, when Brown filed a petition to dissolve the partnership. He desired that the lands be sold and all proper charges paid, and the balance distributed to the partners. Bateh, in his answer, agreed with this. On May 18, 1971, Brown amended his complaint to change the prayer from a sale for division of the partnership real property to a partition or division "in-kind." His prayer still requested that only the lands "in excess of those needed to pay the debts of B-D" be partitioned. This amendment came after a strong suggestion by the trial judge that there be an "in-kind" division. Bateh v. Brown at 711, 271 So.2d at 837.
Brown's initial assignment of error is that the trial judge failed to conduct a new trial after Justice Merrill's reversal and remand. Brown's position is that this court reversed the decree in toto and ordered a new trial if the case were not settled. At the first trial there was insufficient evidence in the record to support the decree and the trial judge failed to follow the dictates of Title 43, § 31.
Bateh's answer is that a trial judge's failure to rule is not reviewable. Judge Barber did not respond to Brown's motion requesting that the litigation be set for trial promptly. Since the judge did not rule adversely to him, Brown has no ruling from which to appeal.
Brown's replication to this is that the trial judge did not merely fail to rule on a motion; he failed to obey the explicit mandate of this court. Failure to set a case for trial is always reviewable. Justice Merrill felt a new trial was necessary to develop the evidence needed to effect a fair distribution of the partnership assets. The only evidence subsequent to remand was Brown's statement given on a "Petition to Order Collection of National Filtronics, Inc., Promissory Notes." This statement has little relevance to the value of the partnership assets.
Bateh asserts that in the context of the present appeal by Brown, as opposed to the prior appeal by Bateh, there are admissions, pleadings and waivers of objection which are competent against Brown, and which are legally sufficient to sustain the decree. Brown, it is argued, did not object to the scheme of partition in the former decree. Consequently he waived any objection to such scheme. The prior scheme of distribution differs only in two details, the handling of certain parcels of land and the treatment of National Filtronics stock. Bateh claims that Brown has sworn in an affidavit and implied in open court that the parcels of land are interchangeable in value. The change in the National Filtronics stock distribution was made to settle an imbalance in capital accounts. Brown has not objected to this since he has gotten more than his share; he wants only to postpone collection. Bateh notes that he, Bateh, has waived his claim to more of the National Filtronics stock award in the interest of reaching a speedy settlement.
At first glance we would agree with Brown that Judge Barber should have set the cause down for trial when no compromise was reached after remand. *Page 676 
According to Justice Merrill a new trial should have been held for the taking of evidence as to the value of the partnership assets to be sold or distributed. Any failure by a trial judge to follow an order of this court is, without question, open to review. A complete trial de novo need not have been held, we believe, if Judge Barber satisfied the evidentiary requirements, or if the parties bound themselves to certain valuations by their pleadings and actions.
Brown's second assignment of error is that Judge Barber erred once again in ordering an "in-kind" distribution of the partnership assets, and in dividing the partnership debts between the individual partners.
First, it is to be noted that the Alabama Partnership Act, Title 43, § 5 (38) and (40), is inapplicable, as litigation began prior to the Act's effective date of January 1, 1972. The controlling section of Alabama law, thus, is Title 43, § 31, which reads as follows:
 "Each member of a partnership may require its property to be applied to the discharge of its debts, and has a lien upon the shares of the other partners for this purpose, and for the payment of the general balance if any due to him."
How is this section to be interpreted? To simplify the positions of the antagonists, Brown believes that this section requires that the partnership assets be sold or distributed "in-kind" to the creditors. After the creditors have been provided for, then the remaining assets can be distributed to the individual partners, either "in-kind," or sold and the proceeds divided.
Bateh takes the opposing view. Title 43, § 31 allows an "in-kind" distribution of the partnership assets and liabilities as long as the creditors are protected. If the "in-kind" partition is fair and supported by the evidence, if it is approved by the creditors, and if it is accepted by the chancellor in equity, then it is to be upheld by this court.
Bateh argues the proposition that upon dissolution of a partnership and payment of creditors, the former partners become tenants in common with respect to the partnership property. Partition is a matter of right, and property cannot be sold for division except upon averment and proof that the property is incapable of equitable partition "in-kind." Howardv. Harrell, 275 Ala. 422, 155 So.2d 525 (1963). The burden of proving that the instant property cannot be equitably partitioned must be affirmatively carried by the party seeking a sale for division. Elliott v. Burch, 293 Ala. 244,301 So.2d 557 (1974). Brown did not object to the partition scheme put forward by one Morton who was the "court-appointed manager," commissioned to report to the trial court and suggest a partition "in-kind." Brown did apply for a rehearing after the decision on remand, but did not appeal the denial of his motion. Consequently he is bound by Morton's report, which should have the same weight as a jury verdict.
We would propound a slightly different interpretation of Title 43, § 31. We agree that partition is a matter of right between tenants in common. Where land cannot be partitioned equitably, an equity court has jurisdiction to sell it for division among the joint owners or tenants in common. Whereas partition is a matter of right, sale for division is statutory; it must be proven that a fair and equitable partition cannot be made. Adams v. Mathieson Alabama Chemical Corp., 262 Ala. 166,77 So.2d 667 (1954); Meador v. Meador, 255 Ala. 688,53 So.2d 546 (1951).
We would emphasize, however, that the right to partition in partnership dissolution does not arise until after the creditors have been satisfied. Obviously *Page 677 
the creditors have a right to have their demands satisfied out of partnership property. But also, as Brown forcefully urges, and Bateh admits somewhat obliquely, a partner has a right to demand that the partnership property first be applied to the satisfaction of partnership debts. Granted, a partnership creditor can sue any partner individually for the payment of all or part of a partnership debt. A partnership debt is, admittedly, the joint and several obligation of the partners. Yet Title 43, § 31 plainly gives a partner the right to require that the partnership property be applied to the payment of partnership debts. If his individual property has been used to satisfy such debts, he has the right to indemnification from partnership property. The policy behind Title 43, § 31 was that partnership property be used to pay partnership debts; separate individual property, to pay private debts. A partner has a right to protect his private property from the demands of partnership creditors, if there is partnership property that can satisfy the partnership debts.
This is what Brown wants; he has stated in his reply brief that either partition or sale for division is acceptable, once the creditors' demands have been satisfied from the partnership assets. He does have such a right to demand that the creditors first be satisfied, as we interpret Title 43, § 31. Whether he has waived his rights, as Bateh asserts, by his conduct or his formal pleadings, is another question.
Brown's next assignment of error argued in brief is that Judge Barber erred in stopping Brown's suit for surplus collateral after a mortgage foreclosure by the First National Bank of Birmingham. Since this alleged error constitutes the bulk of Brown's appeal in S.C. 1058-B, it will be discussed later.
A further assignment of error is that the trial judge failed to enter separate decrees in the three cases. Justice Merrill, in his opinion remanding the case, stated that "In the event it is seen proper to consolidate the cases for the taking of testimony, separate decrees should be entered in the two cases." Bateh v. Brown, at 699 and 712, 271 So.2d 845. Separate decrees were not entered, Brown points out; in fact, a third case was consolidated and dealt with in the final decree. Bateh answers that the final decrees recited that the cases were consolidated. Brown replies that the partnership case and the Bank case were ordered consolidated, but no order was ever entered consolidating these two with the corporation case. Bateh's rejoinder is that separate decrees were entered; each transcript shows this. Brown's surrejoinder is that the identical decree was typed three times. Bateh rebuts that the decrees are as responsive as possible to the issues and the parties' pleadings and claims, given the nature of the parties' business — a hodge-podge of inter-related transactions. Furthermore, Brown has not been harmed by the decrees being identical and he requested consolidation of the partnership and the Bank cases, and his attorney consented to an order consolidating the partnership and corporation cases.
The following assignment of error is concerned with the option apparently given to the creditors and to Bateh to set aside the final decree if Brown petitioned for a rehearing or appealed. Brown's argument is that Judge Barber impaired his statutory right to appeal; such action was prejudicial on its face. Bateh responds that he, Bateh, has waived any right to invoke this portion of the decree. No other party has attempted to have the decree set aside because of Brown's appeal. Brown cannot complain of prejudice, since he has actually appealed. In fact, this portion of the decree could be construed to benefit Brown, since if anyone exercised his option to set the decree aside, Judge Barber would order an immediate sale of the partnership assets, which is what Brown supposedly wants. *Page 678 
Brown's final assignment of error is directed at what he calls an "automatic judgment" granted in favor of Joseph A. Bateh, Jr. against Brown and Bateh, Sr., $15,000 plus interest against each. Brown's position is that a judgment had been rendered against Bateh, Jr. in a separate action and upheld by this court on appeal. Bateh v. Brown, 293 Ala. 704,310 So.2d 186 (1975). Brown's argument seems to be well-taken on its face. Bateh counters that res judicata or collateral estoppel is an affirmative defense, and must be timely raised, if not apparent on the face of the complaint. Brown, it is alleged, did not raise this properly. Brown's response to this allegation is that he could not be required to raise an affirmative defense when no pleading, or claim had been filed by either of Bateh's sons. Res judicata could not have been put into issue until after Judge Barber entered the judgment in favor of Fred Bateh and Joseph A. Bateh, Jr. in his final decree.
Brown is absolutely correct in his assertions. Bateh's sons are prohibited by res judicata or collateral estoppel from their claims. Judge Barber erred in granting judgment in their favor when they had lost their suits at the trial level and in this court. Brown, nevertheless, cannot get off scot-free. A short analysis of the former suits will explain.
Bateh, Jr. and Fred Bateh sued the B-D partnership in Jefferson County, seeking as cumulative relief the return of 75,000 shares of Southeastern Enamaling Company (SECO) stock. Joe's suit sought either the return of 37,500 shares or $30,000 for money had and received; Fred sought only the return of the stock. In an affidavit in support of his motion for summary judgment, Brown swore that "the $30,000 allegedly delivered to B-D Development Company (a partnership comprised solely of Joseph A. Bateh, Sr. and the affiant) by Joseph A. Bateh, Sr. (the father of the plaintiff) [allegedly delivered by the father to purchase the SECO stock for his sons] in 1966 was in fact and in truth a loan by the said Joseph A. Bateh, Sr. to B-D Development Company . . ."
The jury returned a verdict in favor of the defendants, the partners. Trial Judge James O. Haley entered a memorandum opinion on September 20, 1973, the same day judgment was entered. His opinion was that ". . . the jury's verdict and the judgment rendered thereon necessarily amounted to a finding by the jury and a judicial determination by the judgment that the Thirty Thousand ($30,000) Dollar item on the books of B-D Development Company as an account payable to Joseph A. Bateh, Jr. was in truth and fact an advance made by Joseph A. Bateh, Sr. to the partnership and this is an item that should be considered in settling the partnership account." This court agreed with Judge Haley's analysis, for it affirmed the lower court decision, but pointed out, in Justice Jones' words that "Bateh, Sr., put up $30,000 toward the purchase price, all or substantially all of which came from a `common pool' which the Bateh family, including Joe and Fred, jointly maintained."Bateh v. Brown, 293 Ala. 704, 707, 310 So.2d 186, 188 (1975).
As we stated above, Judge Barber erred in the portion of his final decree granting judgment in favor of Joseph A. Bateh, Jr. This error was harmless. What Judge Barber should have done was to consider the $30,000 as a loan to the partnership by Joseph A. Bateh, Sr. and figured this in when balancing the capital accounts.
 S.C. 1058-A — The BBC Investment Company
This case began on May 6, 1971, when Bateh filed a bill of complaint to dissolve the BBC Corporation. The assets and liabilities were divided along with those of the B-D Partnership by the single decree issued on August 31, 1971, Bateh appealed the "in-kind" distribution ordered.
As error Brown assign the same actions of Judge Barber as in the partnership case. *Page 679 
Bateh informs us that there are no creditors of the corporation whose claims were divided between the shareholders, Brown and Bateh. All the creditors whose claims have been divided are creditors of the B-D Partnership. Further, Bateh avers in his "Second Amendment to Motion to Dismiss Appeals" that Brown has admitted that BBC has been dissolved and there are no creditors who have any remaining claims. No matter.
More important is that Brown, in a cross-bill of complaint and answer filed May 30, 1973, has asseverated it would be in the best interest of the BBC shareholders for the realty to be partitioned ". . . after provision is made by the court for the payment, or by consent of the creditor-mortgagees a division ofthe debt and division of collateral, and payment of otheroutstanding debts of the partnership to third parties."
(Emphasis added.)
Judge Barber, it can be seen, gave Brown exactly what he asked for. There can be no complaint on this issue, that the realty was partitioned. Bateh, it is to be remembered, was the party originally opposing an "in-kind" distribution, but he has waived his objection to such a distribution. The only remaining question is whether or not there is evidence properly at hand to show that the division was equitable. We believe there is and feel that Brown has been bound by his pleadings and his conduct in availing himself of the assets awarded him under the decree. He has acquiesced in the distribution scheme and waived his rights to complain.
 S.C. 1058-B — The Bank Action
This case, as discussed above, involves a foreclosure by the First National Bank of Birmingham on certain lots awarded Brown and Bateh by the August 31, 1971 decree — which dissolved the partnership. Each party was ordered to assume one-half of a note due the Bank. The lots and certain listed securities served as security for the note. Because of the partners' dispute, the Bank gave notice of foreclosure on the two lots. A coin toss determined that Brown's lot would be sold first. A Mr. Nick Fawal offered $92,500 which he paid the Bank's attorney. Brown then requested the excess of the sales proceeds over the $87,000 debt. He offered to deliver a warranty deed. The Bank returned the money to Fawal, believing that legal action would be taken if the sale were consummated. Brown then sued the Bank in a separate action for failure to close the sale and for the surplus collateral. The Bank filed a petition in equity to foreclose on Brown's mortgage. Judge Barber then restrained Brown from proceeding with his separate suit against the Bank, pending a final decree in the partnership case. Subsequent to the trial a foreclosure sale was conducted. Brown entered the highest bid, $65,000, but failed to pay the purchase price into the registry of court. The sale was never confirmed. On June 14, 1974, Judge Barber included an order of foreclosure in his final decree. At the same time he made the temporary injunction permanent.
Brown has assigned as error the non-compliance of Judge Barber's order making the temporary injunction permanent with Rule 65 (d) ARCP.
Bateh counters with the argument that, even if the order does not comply with Rule 65 (d), Brown has not been substantially harmed. His interests have been litigated in the instant action; he has merely been stopped from prosecuting a separate action. Brown has not complained of the substantive right to enter the permanent injunction. He has never denied the debt due the Bank.
The Bank argues this also. Brown replies that he is arguing more than a technical failure, that he has a right to have the reasons for the injunction set out. The Bank's parry is that Brown was *Page 680 
given an opportunity to litigate the Bank's justification in aborting the first foreclosure sale, in the Bank's equity suit for foreclosure. Additionally, Judge Barber's order only amended the temporary injunction, making it permanent. The Rule 65 (d) requirements were met. The Bank wants to be able to foreclose in peace; it contends that the aborted foreclosure under a power of sale cannot preclude its foreclosure action in equity. This latter contention was not raised by Brown on appeal. In any case, we agree that the Bank should be allowed to foreclose, as Judge Barber decided. If there was any error in the order making the injunction permanent, it was harmless.
On December 3, 1974, Brown filed three petitions for alternative writs of mandamus, asking that Judge Barber be ordered to set aside his final decrees entered on June 14, 1974, or show cause why he should not do so. The same grounds were alleged as in Brown's appeal, filed on November 15, 1974. The mandamus petitions were continued by this court on December 4, 1974, to be submitted at the time of the submission of the appeal. Bateh has claimed that Brown has waived his mandamus petitions by not arguing them. Brown has answered that this contention is without authority, that no brief is required on a mandamus petition prior to submission. We do not need to reach this question in denying the petitions for mandamus. The same issues are at stake on appeal. Brown's contentions will be answered with the merits of his appeal.
In addition to all of Brown's assignments of error, Bateh has presented us with a question we must answer. He has filed a motion to dismiss Brown's appeal. This motion, filed on April 23, 1975, was continued to be submitted at the time of the submission of the appeal. In this motion Bateh has alleged numerous grounds for dismissal, some substantive, some procedural. The gist of the substantive reasons put forth for dimissal is that Brown has accepted the fruits of Judge Barber's final decrees, and has wasted them, thus becoming unable to make restitution should he prevail on appeal. By so doing Brown has waived any objections to Judge Barber's decrees. Brown cannot avail himself of the decrees and also attack them.
The court will address itself to these contentions infra.
They are identical with the ones brought up on appeal.
Bateh has also accused Brown of several procedural infractions. Allegedly Brown failed to issue citations of appeal to Bateh's sons; he delayed in filing the transcripts of the evidence; he delayed in filing the transcripts of record; he violated Rule 37 in filing a motion for extension with someone other than the trial judge; he failed to furnish various appellees with copies of the appeals transcripts, and with copies of his briefs.
Bateh asks, rhetorically, if his motion to dismiss is hypertechnical. We are not going to answer this now, for we shall address the substantive issues of the appeal first.
Numerous questions have been left open in our opinion thus far. We shall now answer them and resolve the dispute.
1. Did Brown properly raise Judge Barber's failure to order a new trial? Yes, either appeal or in the alternative, mandamus, was the proper method of bringing the question before this court. As we stated supra, any failure of a trial judge to follow an order of this court is open to review.
2. Did Judge Barber commit reversible error in failing to hold a new trial? No, we agree with Bateh that a trial de novo
was not necessary. The only reason Justice Merrill ordered a new trial was to establish evidence for an equitable distribution of the assets. Brown's acquiescence and waiver can be considered as having the same result as the settlement Justice Merrill *Page 681 
encouraged. A new trial was necessary only if the parties could not agree or did not become bound to a scheme of distribution. Judge Barber, while not following the remand order to the letter, did accomplish what we wanted him to do. He developed the evidence necessary for an equitable partition. He presided at the first trial, received Morton's report, and heard arguments on the various motions filed by the parties after remand.
3. Is there evidence properly in the record to support Judge Barber's final decree? Brown, of course, has argued no. His view is that since a new trial should have taken place, no evidence from the first trial is competent. His affidavit, dated May 10, 1971, suggesting certain valuations, is almost five years old. His amended complaint, wherein he asked for partition of assets and division of debts is from the former trial and consequently stale.
Bateh has asserted there is evidence competent against Brown. The initial decree was reversed because Justice Merrill felt there was no evidence competent against Bateh; there was, however, evidence competent against Brown. We need not resort to this, for in his "Second Amendment to Bill of Complaint" filed in open court on May 30, 1973, Brown reiterated his desire to have the assets and liabilities partitioned "in-kind." He even proposed a division substantially similar to, if not identical with, the one later ordered by Judge Barber. Furthermore, the deputy register of the trial court certified in response to a writ of certiorari issued by this court on July 22, 1975, that the parties made admissions and statements in open court, not recorded, as to the equality of the division of the "Docray Lands."
To clinch the argument on this point, Bateh has sworn that Brown has dissipated certain of the assets awarded him. He has sold part of the Docray Lands; he placed a mortgage on the Hi-Way Host Motel in Hattiesburg, then sold his interest by warranty deed; he extended the amortization period of the mortgage and increased the interest rate on the Hi-Way Host Motel in Ozark; and he has permitted foreclosure, albeit by Bateh's wife, on the Motel Continental in Montgomery. He has also allowed foreclosure by the First National Bank, Bateh contends. We do not agree with this latter contention, for Brown has resisted said foreclosure in S.C. 1058-B. He has, however, given SECO stock awarded him by the decree to his children and their spouses. And he has, along with Bateh, asked that final tax returns be prepared on the property awarded him.
For these reasons we think that Brown has waived his rights to complain that there was insufficient evidence to support Judge Barber's final decree.
4. Did the trial judge err in his partnership distribution scheme? We think not. While the dictates of Title 43, § 31 were not followed precisely, we emphasize that we find no reversible error. The law in this state has long recognized the flexibility of the chancellor in equity. Equity applies its own established principles, and it has its own flexible modes of procedure. Donnor v. Quartermas, 90 Ala. 164, 8 So. 715 (1890). Naturally, all equities should be settled and all claims adjusted. Bean v. Northcutt, 240 Ala. 289, 199 So. 7 (1940). We are convinced that Judge Barber has settled all the equities in this case, except for the award to Bateh, Jr., which has been discussed supra.
Brown has bound himself to an "in-kind" distribution by his amendments to his complaint. As stated above, in his "Second Amendment" he said he would be satisfied with a division of the partnership debts. All the creditors have accepted such a division. They are bound by the final decree since their time for appeal has expired. *Page 682 
Brown's contention that his asking for "payment or provision for payment of partnership debts" constituted merely a general plea for relief is without merit. So, too, is his contention all of the creditors of the partnership — namely, First Federal Savings and Loan of Bessemer — are not bound by the decree. Brown's and Bateh's obligation on the note to First Federal is only secondary. Even if the primary obligor, Inreco Corporation has defaulted, there is sufficient collateral to satisfy the obligation, the Holiday Inn in Bessemer.
5. Was it reversible error not to issue separate decrees? No, Judge Barber's failure to order all three cases consolidated was an oversight. In any event, Brown and his attorneys requested consolidation. He has not been harmed by the congruence of the decrees.
6. Was it error to grant Bateh and the creditors options to set aside the final decree? Again we find no prejudicial error. No one elected to exercise his option. Judge Barber, sitting as chancellor, was attempting to protect a delicate decree. He recognized that if he followed the mandate of Title 43, § 31 and sold all the business assets, there would be stunning tax consequences to the parties.
For the above reasons we deny Brown's petition for mandamus, deny the motions to dismiss, and affirm the trial court's judgment, except for the award of $30,000 to Joseph A. Bateh, Jr. This we reverse, with instructions to treat the debt as discussed above.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS.
HEFLIN, C.J., and BLOODWORTH, ALMON, and EMBRY, JJ., concur.